UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KEVIN HEFFERNAN,

                              Plaintiff,

          -against-

FRANK G. STRAUB, individually and in
his capacity as Commissioner of Public
Safety for the City of White Plains, N.Y.,
RICHARD LYMAN, individually and in his
capacity as Chief of the City of White Plains
Fire Bureau, Department of Public Safety,
RICHARD HOULIHAN, individually and
in his capacity as Deputy Chief, White Plains
Fire Bureau, Department of Public Safety,
VINCENT ROBERTO, individually and in
his capacity as Deputy Fire Chief, White
Plains Fire Bureau, Department of Public
Safety and the CITY OF WHITE PLAINS,
New York,

                              Defendants.

--------------------------------------------------------x

**ORIGINAL**

07 Civ.    (        )

**'07 CIV 11260**

**JUDGE CONNER**

**COMPLAINT**

**Jury Trial Demanded**

          Plaintiff KEVIN HEFFERNAN, by his attorneys Lovett & Gould, LLP, for his

complaint respectfully states:

### NATURE OF THE ACTION

          1. This is an action for compensatory and punitive damages, proximately resulting

from retaliatory conduct jointly engaged in by Defendants while they were acting under

color of the laws of the State of New York, for violations of Plaintiff's rights as

guaranteed by the First and Fourteenth Amendments to the United States Constitution, 42

U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.


## THE PARTIES

3. Plaintiff KEVIN HEFFERNAN is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was: i) a Fire Lieutenant employed in the White Plains Fire Bureau, Department of Public Safety of the City of White Plains, New York; ii) the Vice President of the Professional Fire Fighters Association, Inc. (hereinafter "PFFA"), Local 274, I.A.F.F., A.F.L.-CIO; and iii) the duly appointed Chairman of the PFFA's Health and Safety Committee (hereinafter alternatively "Chairman").

4. Defendant FRANK G. STRAUB (hereinafter "Straub"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Commissioner of Public Safety for the City of White Plains, New York. As such he is a policymaker for the Defendant City and in that connection has final, discretionary decision making authority over the institution, prosecution and final administrative disposition of disciplinary proceedings brought against members of the Fire Bureau pursuant to Section 75 of the New York State Civil Service Law.

5. Defendant RICHARD LYMAN (hereinafter "Lyman"), who is sued individually and officially, at all times relevant to this complaint was employed as Fire Chief of the City of White Plains Fire Bureau, Department of Public Safety,

2

6. Defendant RICHARD HOULIHAN (hereinafter "Houlihan") who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Chief, White Plains Fire Bureau, Department of Public Safety.

7. Defendant VINCENT ROBERTO (hereinafter "Roberto"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Fire Chief, White Plains Fire Bureau, Department of Public Safety.

8. Defendant CITY OF WHITE PLAINS, New York (hereinafter "City") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

9. On April 20, 2005, at the direction of Roberto "live fire" training was conducted requiring the presence at the Department's drill school of four out of the nine City fire trucks - - a circumstance which, by reason of Roberto's stunning stupidity, left available for the entire City's fire protection only one rescue vehicle, three fire engines and one truck. At no time was Roberto subjected to disciplinary action by Straub, despite his (Roberto's) having unilaterally, literally put the health and safety of the entire City of White Plains at risk.

10. Following the conduct of certain live fire training exercises, a real fire broke out at the rear of a residence situated at 10 Rose Street in the City as a result of which Roberto directed that the live fire training cease and that the equipment and men training at the drill site "go available", that is return to their respective firehouses to "cover" the City.

3

11. Justifiably concerned about the health and safety of the fire fighters who had been engaged in the live fire training and as a result were obviously physically exhausted, Plaintiff by radio transmission cautioned Defendants - - as he was required to do solely by reason of his status as Vice President of the PFFA and Chairman of the PFFA's Health and Safety Committee - - that those fire fighters were "fatigued".

12. As a proximate result of Plaintiff's expression of concern and motivated by a intent to retaliate against Plaintiff by reason of that expression of concern, Straub, Lyman, Houlihan and Roberto entered into an agreement on April 20, 2005, to institute and prosecuted disciplinary proceedings intended to terminate Plaintiff's employment. In that connection and with a view towards giving the false impression that the disciplinary action was being pursued because of a supposedly slow response time demonstrated by the fire fighters' reaction to Roberto's directive referenced in paragraph "10", *supra*, two Fire Lieutenants were brought up on disciplinary charges: Plaintiff and Lawrence Toglia (hereinafter "Toglia"). Toglia was not an official of the PFFA and had no PFFA responsibilities for matters relating to health and safety of PFFA members.

13. In furtherance of Defendants' plan to retaliate against Plaintiff, and to use Toglia to create the referenced false impression:

    a. Lyman preferred against Toglia disciplinary charges accusing him, in substance, of failing to timely respond to Roberto's order to "go available", and,

    b. Lyman on or about July 29, 2005, preferred against Plaintiff the exact same disciplinary charges as preferred against Toglia but additionally accused Plaintiff of violating Section 128 of the Department of Public Safety's rules (prohibiting members from engaging in conduct "which may bring reproach or reflect discredit upon the

4

Department"). Specifically with respect to Plaintiff, and unlike Toglia, a sixth

disciplinary charge as agreed to by all of the Defendants alleged:

> ". . .that on or about April 20, 2005[,] at approximately
>
> 1:47 p.m., you made an inappropriate radio transmission
>
> advising Ross Street command that drill school companies
>
> are fatigued during a working fire".

14. Because that sixth Charge targeted Plaintiff for speaking out on a matter of

public concern in his Vice President and Chairman capacities, on November 15, 2005, the

PFFA filed an Improper Practice Charge (#U26382, hereinafter "IP") with the New York

State Public Employment Relations Board (hereinafter "PERB"). By "Notice" dated

November 30, 2005, and received by the City's Department of Law on December 2,

2005, PERB directed that the City and PFFA attend a conference on January 12, 2006,

with respect to the IP.

15. Under the circumstances and by prior agreement among the Defendants,

Toglia's disciplinary charges were amicably resolved as a result of which Toglia forfeited

one day's pay.

16. Since Plaintiff's disciplinary charges were not disposed of by agreement, a

formal disciplinary hearing commenced on December 13, 2005. In that connection

Defendants, by the City's Law Department, advised the Hearing Officer in an opening

statement that Plaintiff's supposed misconduct was so "egregious" as to warrant his

"dismissal" from the City's employ. Immediately following those opening remarks,

Defendants' legal representative withdrew, on behalf of "Commissioner Straub", Charge

VI - - manifestly because Defendants appreciated that Plaintiff's expression of concern

regarding matters of health and safety, as articulated by him in his Vice

President/Chairman of the Health and Safety Committee capacities, comprised First

Amendment protected speech expressed by Plaintiff in the exercise of his associational

rights..

16. On March 18, 2007, the Hearing Officer, Robert Ponzini, Esq. - - who had

been intentionally selected because of his well-established (and justified) reputation for

always ruling against employees in Section 75 disciplinary proceedings and always ruling

in favor of the municipal corporation because it pays his fees - - issued a report and

recommendation substantially ignoring the evidence, finding Plaintiff "guilty" and

recommending (based, upon information and belief, upon an *ex parte* communication

with the Defendants' legal representative) imposition of a thirty day payless suspension.

17. On April 24, 2007, Straub adopted Ponzini's recommendations and issued a

final administration determination imposing upon Plaintiff a thirty day payless

suspension "commencing April 26, 2007[,] through and including May 25, 2007".

18. As a proximate result of Defendants' retaliatory plan and the acts taken by

them in furtherance of it, Plaintiff has been forced to endure: substantial pecuniary losses;

a break in service attributable to the payless suspension and a concomitant impairment of

his future retirement benefits; punishment for exercising his right of free speech as

protected by the First Amendment; punishment for exercising his right of association as

protected by the First Amendment; denial, when contrasted with identically situated Fire

Lieutenant Toglia, of his right to Equal Protection; emotional upset; anxiety; fear of

termination of employment as demanded by Defendant's counsel at the outset of the disciplinary hearing; public embarrassment; public humiliation; a chilling of his prospective exercise of his rights as guaranteed by the First Amendment; shame; and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

19. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

20. Under the premises Defendants' retaliatory conduct violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

22. Under the premises Defendants' retaliatory conduct violated Plaintiff's right of association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

24. Under the premises Defendants' disparate treatment of Plaintiff, as contrasted with the treatment accorded identically situated Fire Lieutenant Toglia, violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

a.  Awarding against the individually named Defendants such punitive damages as the jury may impose,

b.  Awarding against all Defendants such compensatory damages as the jury may determine,

c.  Awarding against all Defendants reasonable attorney's fees and costs, and,

d.  Granting such other and further relief as to the Court seems just and proper.

Dated: November 30, 2007
       White Plains, N.Y.

LOVETT & GOULD, LLP
By: _____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401