UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN HEFFERNAN,

                Plaintiff,

    -against-                             07 Civ. 11260 (WCC)

FRANK G. STRAUB, individually and in
his capacity as Commissioner of Public
Safety for the City of White Plains, N.Y.,
RICHARD LYMAN, individually and in his
capacity as Chief of the City of White Plains      **FIRST AMENDED**
Fire Bureau, Department of Public Safety,       **COMPLAINT**
RICHARD HOULIHAN, individually and
in his capacity as Deputy Chief, White Plains
Fire Bureau, Department of Public Safety,
VINCENT ROBERTO, individually and in
his capacity as Deputy Fire Chief, White
Plains Fire Bureau, Department of Public
Safety and the CITY OF WHITE PLAINS,
New York,

                Defendants.
-----------------------------------------------------------x

      Plaintiff KEVIN HEFFERNAN, by his attorneys Lovett & Gould, LLP, for his First Amended Complaint respectfully states:

**NATURE OF THE ACTION**

      1. This is an action for compensatory and punitive damages, proximately resulting from retaliatory conduct jointly engaged in by Defendants while they were acting under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff KEVIN HEFFERNAN is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was: i) a Fire Lieutenant employed in the White Plains Fire Bureau, Department of Public Safety of the City of White Plains, New York; ii) the Vice President of the Professional Fire Fighters Association, Inc. (hereinafter "PFFA"), Local 274, I.A.F.F., A.F.L.-CIO; iii) the duly appointed Chairman of the PFFA's Health and Safety Committee (hereinafter "Chairman"); and (iv) outspoken on behalf of the PFFA and its membership on various matters of public concern, including *inter alia* matters directly affecting the health and safety of both City employees and citizens.

4. Defendant FRANK G. STRAUB (hereinafter "Straub"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Commissioner of Public Safety for the City of White Plains, New York. As such he is a policymaker for the Defendant City and in that connection has final, discretionary decision making authority over the institution, prosecution and final administrative disposition of disciplinary proceedings brought against members of the Fire Bureau pursuant to Section 75 of the New York State Civil Service Law.

5. Defendant RICHARD LYMAN (hereinafter "Lyman"), who is sued individually and officially, at all times relevant to this complaint was employed as Fire Chief of the City of White Plains Fire Bureau, Department of Public Safety,

6. Defendant RICHARD HOULIHAN (hereinafter "Houlihan") who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Chief, White Plains Fire Bureau, Department of Public Safety.

7. Defendant VINCENT ROBERTO (hereinafter "Roberto"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Fire Chief, White Plains Fire Bureau, Department of Public Safety.

8. Defendant CITY OF WHITE PLAINS, New York (hereinafter "City") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

9. In 2003 and 2004, Plaintiff engaged in union activities in his capacity as a member of the PFFA's administration, in his positions as a trustee, Vice President, and Chairman of the Health and Safety Committee, including:

   a. participating on behalf of the PFFA in meetings with the City's Fire Bureau administration, including some if not all of the Defendants, at which he raised important safety concerns, expressed opinions about the level of manpower needed to effectively and safely participate in Rescue and Haz Mat missions, and questioned the sufficiency of the City's proposal for a Rescue and Haz Mat Unit;

   b. participating on behalf of the PFFA in meetings with Defendant Straub, Lyman, and other City officials at which Plaintiff expressed concerns about the City's failure to implement a decision and order rendered by the New York Supreme Court, County of Westchester, with respect to the City inappropriately utilizing members of the

3

Fire Bureau in an out of title "Lieutenant" capacity in violation of New York State Civil Service laws;

  c. attending the City's budget and finance committee meetings on behalf of the PFFA, at which Straub and other City officials were present, as a result of which the PFFA Executive Board determined to pursue matters with the City Council involving safety concerns that existed with respect to both Fire Bureau personnel and citizens of the City of White Plains resulting from a lack of manpower, updated and/or sufficient equipment, concerns about the ability to respond to fires in the City's growing population of high rise structures, and the need for rehabilitation of firefighters after strenuous training in order to prevent injury to firefighters and citizens;

  d. expressing concerns to City council members on behalf of the PFFA, who in turn advised Defendants of the PFFA's concerns, with respect to health and safety matters, including the need for sufficient backup of members engaged in emergency responses in order to prevent injury, the need for a plan in responding to the dangers associated specifically with high rise buildings, the need for fire fighting equipment necessary to effectively carry out firefighting duties, and the fact that the City was exposing itself to potential litigation by failing to comply with national minimum standards in fire safety;

  e. raising a concern that the City failed to hire additional fire personnel sufficient to safely combat life threatening fires in the City while at the same time expending resources in hiring additional police personnel, and, *inter alia,*

  f. campaigning for the position of PFFA Vice President during which Plaintiff expressed disagreement with the manner in which Defendants were operating

the Fire Bureau as it directly affected issues impairing the health and safety of both City employees and citizens.

10. On April 20, 2005, at the direction of Roberto "live fire" training was conducted requiring the presence at the Department's drill school of four out of the nine City fire trucks - - a circumstance which, by reason of Roberto's stunning stupidity, left available for the entire City's fire protection only one rescue vehicle, three fire engines and one truck. At no time was Roberto subjected to disciplinary action by Straub, despite his (Roberto's) having unilaterally, literally put the health and safety of the entire City of White Plains at risk.

11. The live fire training consisted of two different "evolutions" on this inordinately hot April day during which members present were dressed in full gear, engaged in actual firefighting duties during drills extinguishing live burns in a concrete and metal structure, used up in whole or substantial respect their available "scott pak" breathing equipment and water supply, and were rendered tired, thirsty, and overheated.

12. Near the conclusion of the second evolution, a fire broke out at the rear of a residence situated at 10 Rose Street in the City as a result of which Roberto directed that the equipment and men training at the drill site "go available", that is ready their vehicles so as to be available to "cover" the City in the event of another emergency call.

13. Plaintiff and the members assigned to his crew complied with Roberto's directive, as did others at the drill school. At that time it was determined by the Lieutenant in charge of fire training that all members would first assist two of the four crews in readying their fire vehicles.

14. While complying with Roberto's directives, Plaintiff was approached specifically in his capacity as Chairman of the Health and Safety Committee by another member present at the live fire training drill site who was concerned about the lack of rehabilitation of those members who had engaged in the live fire training that day.

15. Thus, in his capacity as Chairman and justifiably concerned about the health and safety of the fire fighters who had been engaged in the live fire training and were physically exhausted, lacked any time for rehabilitation and refreshment of supplies, and out of concern for the safety of citizens whom these firefighters may be called upon to assist and/or rescue, Plaintiff cautioned Defendants by radio transmission that the command needed to be aware those fire fighters who were at the drill site that day were "fatigued".

16. Plaintiff's expressions of concern were then the subject of discussions amongst, *inter alia*, Defendants Lyman and Roberto.

17. As a proximate result, motivated by a intent to retaliate against Plaintiff by reason of his aforementioned union activities, his expressive association and his expressions of concern on April 20, 2005 and by an intent to silence and/or significantly curb Plaintiff's exercise of these rights, Straub, Lyman, Houlihan and Roberto entered into an agreement on April 20, 2005, to institute and prosecute disciplinary proceedings intended to terminate Plaintiff's employment. In that connection and with a view towards giving the false impression that the disciplinary action was being pursued because of a supposedly slow response time demonstrated by the fire fighters' reaction to Roberto's directive referenced *supra*, two Fire Lieutenants were brought up on disciplinary charges: Plaintiff and Lawrence Toglia (hereinafter "Toglia").

18. Toglia was not an official of the PFFA and had no PFFA responsibilities for matters relating to health and safety of PFFA members.

19. In furtherance of Defendants' plan to retaliate against Plaintiff, and to use Toglia to create the referenced false impression:

    a. Lyman preferred against Toglia disciplinary charges accusing him, in substance, of failing to timely respond to Roberto's order to "go available" but then told Toglia that he [Toglia] was simply "in the wrong place at the wrong time" while referring to Toglia questions about his communications specifically with Plaintiff on the date of the fire training (April 20. 2005); and,

    b. Lyman on or about July 29, 2005, preferred against Plaintiff the exact same disciplinary charges as preferred against Toglia but additionally accused Plaintiff in a sixth charge of violating Section 128 of the Department of Public Safety's rules (prohibiting members from engaging in conduct "which may bring reproach or reflect discredit upon the Department").

20. The additional disciplinary charge, labeled as the Charge VI, preferred against Plaintiff specifically targeted his expressions of safety and health concerns, and unlike the charges against Toglia, alleged:

> "...that on or about April 20, 2005[,] at approximately 1:47 p.m., you made an inappropriate radio transmission advising Ross Street command that drill school companies are fatigued during a working fire".

21. Because Charge VI targeted Plaintiff for speaking out on a matter of public concern in his Vice President and Chairman capacities, on November 15, 2005, the PFFA

filed an Improper Practice Charge (#U26382, hereinafter "IP") with the New York State Public Employment Relations Board (hereinafter "PERB"). By "Notice" dated November 30, 2005, and received by the City's Department of Law on December 2, 2005, PERB directed that the City and PFFA attend a conference on January 12, 2006, with respect to the IP.

22. During the pendency of the disciplinary charges, and before the hearing occurred, Plaintiff, in his capacity as a PFFA Executive Board member, interviewed candidates for the upcoming November 2005 election. During those interviews, Plaintiff specifically focused on health and safety concerns which the PFFA and its members had, including but not limited to manpower, equipment, and response to emergency situations.

23. Under the circumstances and by prior agreement of the Defendants, Toglia's disciplinary charges were amicably resolved as a result of which Toglia forfeited one to three days of accrued time.

24. Since Plaintiff's disciplinary charges were not disposed of by agreement, a formal disciplinary hearing commenced on December 13, 2005.

25. In that connection Defendants, motivated by their intent to retaliate against Plaintiff further by reason of his continued associational and free speech activities, acting by the City's Law Department advised the Hearing Officer in an opening statement and a post-hearing brief that Plaintiff's supposed misconduct was so "egregious" as to warrant his "dismissal" from the City's employ.

26. Immediately following these opening remarks, Defendants' legal representative withdrew, on behalf of "Commissioner Straub", Charge VI - - manifestly because Defendants appreciated that Plaintiff's expression of concern regarding matters

8

of health and safety, as articulated by him in his Vice President/Chairman of the Health and Safety Committee capacities, comprised First Amendment protected speech expressed by Plaintiff during the exercise of his associational rights.

27. At the disciplinary hearing, testimony was adduced demonstrating the bogus nature of the disciplinary charges against Plaintiff, namely that after the Rose Street call came in everyone at the drill school, including Plaintiff, worked diligently to extinguish the then burning fire, collect equipment from in and around the burning building, dismantle a five inch supply hose which was preventing trucks from exiting the drill school, assist two crews in readying their trucks for immediate response after which time Plaintiff and his crew gathered their equipment and readied their vehicle.

28. Despite that evidence, on March 18, 2007, the Hearing Officer, Robert Ponzini, Esq. - - who had been intentionally selected because of his well-established (and justified) reputation for always ruling against employees in Section 75 disciplinary proceedings and always ruling in favor of the municipal corporation because it pays his fees - - issued a report and recommendation substantially ignoring the evidence, finding Plaintiff "guilty" and recommending (based, upon information and belief, upon an *ex parte* communication with the Defendants' legal representative) imposition of a thirty day payless suspension.

29. On April 24, 2007, Straub adopted Ponzini's recommendations and issued a final administrative determination imposing upon Plaintiff a thirty day payless suspension "commencing April 26, 2007 through and including May 25, 2007".

30. In contrast to the treatment accorded Plaintiff, in 2003 under Defendant Straub and Lyman's tenure as Commissioner and Chief respectively, other similarly situated

members of the Fire Bureau were not similarly charged, prosecuted or disciplined when their response time from a training event to an active fire took over 25 minutes.

31. As a proximate result of Defendants' retaliatory plan and the acts taken by them in furtherance of that plan, Plaintiff has been forced to endure: substantial pecuniary losses; a break in service attributable to the payless suspension and a concomitant impairment of his future retirement benefits; punishment for exercising his right of free speech as protected by the First Amendment; punishment for exercising his right of association as protected by the First Amendment; denial, when contrasted with identically situated members of the Fire Bureau, of his right to Equal Protection; emotional upset; anxiety; fear of termination of employment as demanded by Defendant's counsel at the outset of the disciplinary hearing; public embarrassment; public humiliation; a chilling of his prospective exercise of his rights as guaranteed by the First Amendment; shame; and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

32. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

33. Under the premises Defendants' retaliatory conduct violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

34. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

35. Under the premises Defendants' retaliatory conduct violated Plaintiff's right of association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

36. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

37. Under the premises Defendants' disparate treatment of Plaintiff, as contrasted with the treatment accorded similarly situated members of the Fire Bureau, violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

b. Awarding against all Defendants such compensatory damages as the jury may determine,

c. Awarding against all Defendants reasonable attorney's fees and costs, and,

      d. Granting such other and further relief as to the Court seems just and proper.

Dated: April 4, 2008
      White Plains, N.Y.

                                    LOVETT & GOULD, LLP
                                    By: _____
                                    Kim Berg (KB1425)
                                    Attorneys for Plaintiff
                                    222 Bloomingdale Road
                                    White Plains, N.Y. 10605
                                    914-428-8401