Exhibit "G"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*No Parties Added*

-------------------------------------------------------x

KEVIN HEFFERNAN,

ORIGINAL

                              Plaintiff,                                    )

            -against-                              07 Civ.  11260 (WCC)

FRANK G. STRAUB, individually and in
his capacity as Commissioner of Public
Safety for the City of White Plains, N.Y.,
RICHARD LYMAN, individually and in his
capacity as Chief of the City of White Plains          **FIRST AMENDED**
Fire Bureau, Department of Public Safety,              **COMPLAINT**
RICHARD HOULIHAN, individually and
in his capacity as Deputy Chief, White Plains
Fire Bureau, Department of Public Safety,
VINCENT ROBERTO, individually and in
his capacity as Deputy Fire Chief, White
Plains Fire Bureau, Department of Public
Safety and the CITY OF WHITE PLAINS,
New York,

                              Defendants.
-------------------------------------------------------x

        Plaintiff KEVIN HEFFERNAN, by his attorneys Lovett & Gould, LLP, for his

First Amended Complaint respectfully states:


### NATURE OF THE ACTION

        1. This is an action for compensatory and punitive damages, proximately resulting

from retaliatory conduct jointly engaged in by Defendants while they were acting under

color of the laws of the State of New York, for violations of Plaintiff's rights as

guaranteed by the First and Fourteenth Amendments to the United States Constitution, 42

U.S.C. §1983.

1

**JURISDICTION**

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

**THE PARTIES**

3. Plaintiff KEVIN HEFFERNAN is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was: i) a Fire Lieutenant employed in the White Plains Fire Bureau, Department of Public Safety of the City of White Plains, New York; ii) the Vice President of the Professional Fire Fighters Association, Inc. (hereinafter "PFFA"), Local 274, I.A.F.F., A.F.L.-CIO; iii) the duly appointed Chairman of the PFFA's Health and Safety Committee (hereinafter "Chairman"); and (iv) outspoken on behalf of the PFFA and its membership on various matters of public concern, including *inter alia* matters directly affecting the health and safety of both City employees and citizens.

4. Defendant FRANK G. STRAUB (hereinafter "Straub"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Commissioner of Public Safety for the City of White Plains, New York. As such he is a policymaker for the Defendant City and in that connection has final, discretionary decision making authority over the institution, prosecution and final administrative disposition of disciplinary proceedings brought against members of the Fire Bureau pursuant to Section 75 of the New York State Civil Service Law.

5. Defendant RICHARD LYMAN (hereinafter "Lyman"), who is sued individually and officially, at all times relevant to this complaint was employed as Fire Chief of the City of White Plains Fire Bureau, Department of Public Safety,

2

6. Defendant RICHARD HOULIHAN (hereinafter "Houlihan") who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Chief, White Plains Fire Bureau, Department of Public Safety.

7. Defendant VINCENT ROBERTO (hereinafter "Roberto"), who is sued individually and in his official capacity, at all times relevant to this complaint was employed as Deputy Fire Chief, White Plains Fire Bureau, Department of Public Safety.

8. Defendant CITY OF WHITE PLAINS, New York (hereinafter "City") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

9. In 2003 and 2004, Plaintiff engaged in union activities in his capacity as a member of the PFFA's administration, in his positions as a trustee, Vice President, and Chairman of the Health and Safety Committee, including:

a. participating on behalf of the PFFA in meetings with the City's Fire Bureau administration, including some if not all of the Defendants, at which he raised important safety concerns, expressed opinions about the level of manpower needed to effectively and safely participate in Rescue and Haz Mat missions, and questioned the sufficiency of the City's proposal for a Rescue and Haz Mat Unit;

b. participating on behalf of the PFFA in meetings with Defendant Straub, Lyman, and other City officials at which Plaintiff expressed concerns about the City's failure to implement a decision and order rendered by the New York Supreme Court, County of Westchester, with respect to the City inappropriately utilizing members of the

3

Fire Bureau in an out of title "Lieutenant" capacity in violation of New York State Civil

Service laws;

c. attending the City's budget and finance committee meetings on behalf

of the PFFA, at which Straub and other City officials were present, as a result of which

the PFFA Executive Board determined to pursue matters with the City Council involving

safety concerns that existed with respect to both Fire Bureau personnel and citizens of the

City of White Plains resulting from a lack of manpower, updated and/or sufficient

equipment, concerns about the ability to respond to fires in the City's growing population

of high rise structures, and the need for rehabilitation of firefighters after strenuous

training in order to prevent injury to firefighters and citizens;

d. expressing concerns to City council members on behalf of the PFFA,

who in turn advised Defendants of the PFFA's concerns, with respect to health and safety

matters, including the need for sufficient backup of members engaged in emergency

responses in order to prevent injury, the need for a plan in responding to the dangers

associated specifically with high rise buildings, the need for fire fighting equipment

necessary to effectively carry out firefighting duties, and the fact that the City was

exposing itself to potential litigation by failing to comply with national minimum

standards in fire safety;

e. raising a concern that the City failed to hire additional fire personnel

sufficient to safely combat life threatening fires in the City while at the same time

expending resources in hiring additional police personnel, and, *inter alia,*

f. campaigning for the position of PFFA Vice President during which

Plaintiff expressed disagreement with the manner in which Defendants were operating

4

the Fire Bureau as it directly affected issues impairing the health and safety of both City employees and citizens.

10. On April 20, 2005, at the direction of Roberto "live fire" training was conducted requiring the presence at the Department's drill school of four out of the nine City fire trucks - - a circumstance which, by reason of Roberto's stunning stupidity, left available for the entire City's fire protection only one rescue vehicle, three fire engines and one truck. At no time was Roberto subjected to disciplinary action by Straub, despite his (Roberto's) having unilaterally, literally put the health and safety of the entire City of White Plains at risk.

11. The live fire training consisted of two different "evolutions" on this inordinately hot April day during which members present were dressed in full gear, engaged in actual firefighting duties during drills extinguishing live burns in a concrete and metal structure, used up in whole or substantial respect their available "scott pak" breathing equipment and water supply, and were rendered tired, thirsty, and overheated.

12. Near the conclusion of the second evolution, a fire broke out at the rear of a residence situated at 10 Rose Street in the City as a result of which Roberto directed that the equipment and men training at the drill site "go available", that is ready their vehicles so as to be available to "cover" the City in the event of another emergency call.

13. Plaintiff and the members assigned to his crew complied with Roberto's directive, as did others at the drill school. At that time it was determined by the Lieutenant in charge of fire training that all members would first assist two of the four crews in readying their fire vehicles.

5

14. While complying with Roberto's directives, Plaintiff was approached specifically in his capacity as Chairman of the Health and Safety Committee by another member present at the live fire training drill site who was concerned about the lack of rehabilitation of those members who had engaged in the live fire training that day.

15. Thus, in his capacity as Chairman and justifiably concerned about the health and safety of the fire fighters who had been engaged in the live fire training and were physically exhausted, lacked any time for rehabilitation and refreshment of supplies, and out of concern for the safety of citizens whom these firefighters may be called upon to assist and/or rescue, Plaintiff cautioned Defendants by radio transmission that the command needed to be aware those fire fighters who were at the drill site that day were "fatigued".

16. Plaintiff's expressions of concern were then the subject of discussions amongst, *inter alia*, Defendants Lyman and Roberto.

17. As a proximate result, motivated by a intent to retaliate against Plaintiff by reason of his aforementioned union activities, his expressive association and his expressions of concern on April 20, 2005 and by an intent to silence and/or significantly curb Plaintiff's exercise of these rights, Straub, Lyman, Houlihan and Roberto entered into an agreement on April 20, 2005, to institute and prosecute disciplinary proceedings intended to terminate Plaintiff's employment. In that connection and with a view towards giving the false impression that the disciplinary action was being pursued because of a supposedly slow response time demonstrated by the fire fighters' reaction to Roberto's directive referenced *supra,* two Fire Lieutenants were brought up on disciplinary charges: Plaintiff and Lawrence Toglia (hereinafter "Toglia").

6

18. Toglia was not an official of the PFFA and had no PFFA responsibilities for matters relating to health and safety of PFFA members.

19. In furtherance of Defendants' plan to retaliate against Plaintiff, and to use Toglia to create the referenced false impression:

a. Lyman preferred against Toglia disciplinary charges accusing him, in substance, of failing to timely respond to Roberto's order to "go available" but then told Toglia that he [Toglia] was simply "in the wrong place at the wrong time" while referring to Toglia questions about his communications specifically with Plaintiff on the date of the fire training (April 20. 2005); and,

b. Lyman on or about July 29, 2005, preferred against Plaintiff the exact same disciplinary charges as preferred against Toglia but additionally accused Plaintiff in a sixth charge of violating Section 128 of the Department of Public Safety's rules (prohibiting members from engaging in conduct "which may bring reproach or reflect discredit upon the Department").

20. The additional disciplinary charge, labeled as the Charge VI, preferred against Plaintiff specifically targeted his expressions of safety and health concerns, and unlike the charges against Toglia, alleged:

". . .that on or about April 20, 2005[,] at approximately

1:47 p.m., you made an inappropriate radio transmission

advising Ross Street command that drill school companies

are fatigued during a working fire".

21. Because Charge VI targeted Plaintiff for speaking out on a matter of public concern in his Vice President and Chairman capacities, on November 15, 2005, the PFFA

filed an Improper Practice Charge (#U26382, hereinafter "IP") with the New York State Public Employment Relations Board (hereinafter "PERB"). By "Notice" dated November 30, 2005, and received by the City's Department of Law on December 2, 2005, PERB directed that the City and PFFA attend a conference on January 12, 2006, with respect to the IP.

22. During the pendency of the disciplinary charges, and before the hearing occurred, Plaintiff, in his capacity as a PFFA Executive Board member, interviewed candidates for the upcoming November 2005 election. During those interviews, Plaintiff specifically focused on health and safety concerns which the PFFA and its members had, including but not limited to manpower, equipment, and response to emergency situations.

23. Under the circumstances and by prior agreement of the Defendants, Toglia's disciplinary charges were amicably resolved as a result of which Toglia forfeited one to three days of accrued time.

24. Since Plaintiff's disciplinary charges were not disposed of by agreement, a formal disciplinary hearing commenced on December 13, 2005.

25. In that connection Defendants, motivated by their intent to retaliate against Plaintiff further by reason of his continued associational and free speech activities, acting by the City's Law Department advised the Hearing Officer in an opening statement and a post-hearing brief that Plaintiff's supposed misconduct was so "egregious" as to warrant his "dismissal" from the City's employ.

26. Immediately following these opening remarks, Defendants' legal representative withdrew, on behalf of "Commissioner Straub", Charge VI - - manifestly because Defendants appreciated that Plaintiff's expression of concern regarding matters

8

of health and safety, as articulated by him in his Vice President/Chairman of the Health
and Safety Committee capacities, comprised First Amendment protected speech
expressed by Plaintiff during the exercise of his associational rights.

27. At the disciplinary hearing, testimony was adduced demonstrating the bogus
nature of the disciplinary charges against Plaintiff, namely that after the Rose Street call
came in everyone at the drill school, including Plaintiff, worked diligently to extinguish
the then burning fire, collect equipment from in and around the burning building,
dismantle a five inch supply hose which was preventing trucks from exiting the drill
school, assist two crews in readying their trucks for immediate response after which time
Plaintiff and his crew gathered their equipment and readied their vehicle.

28. Despite that evidence, on March 18, 2007, the Hearing Officer, Robert
Ponzini, Esq. - - who had been intentionally selected because of his well-established (and
justified) reputation for always ruling against employees in Section 75 disciplinary
proceedings and always ruling in favor of the municipal corporation because it pays his
fees - - issued a report and recommendation substantially ignoring the evidence, finding
Plaintiff "guilty" and recommending (based, upon information and belief, upon an *ex
parte* communication with the Defendants' legal representative) imposition of a thirty
day payless suspension.

29. On April 24, 2007, Straub adopted Ponzini's recommendations and issued a
final administrative determination imposing upon Plaintiff a thirty day payless suspension
"commencing April 26, 2007 through and including May 25, 2007".

30. In contrast to the treatment accorded Plaintiff, in 2003 under Defendant Straub
and Lyman's tenure as Commissioner and Chief respectively, other similarly situated

9

members of the Fire Bureau were not similarly charged, prosecuted or disciplined when their response time from a training event to an active fire took over 25 minutes.

31. As a proximate result of Defendants' retaliatory plan and the acts taken by them in furtherance of that plan, Plaintiff has been forced to endure: substantial pecuniary losses; a break in service attributable to the payless suspension and a concomitant impairment of his future retirement benefits; punishment for exercising his right of free speech as protected by the First Amendment; punishment for exercising his right of association as protected by the First Amendment; denial, when contrasted with identically situated members of the Fire Bureau, of his right to Equal Protection; emotional upset; anxiety; fear of termination of employment as demanded by Defendant's counsel at the outset of the disciplinary hearing; public embarrassment; public humiliation; a chilling of his prospective exercise of his rights as guaranteed by the First Amendment; shame; and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

32. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

33. Under the premises Defendants' retaliatory conduct violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

10

## AS AND FOR A SECOND CLAIM

34. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

35. Under the premises Defendants' retaliatory conduct violated Plaintiff's right of association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

36. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "31", inclusive.

37. Under the premises Defendants' disparate treatment of Plaintiff, as contrasted with the treatment accorded similarly situated members of the Fire Bureau, violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding against all Defendants such compensatory damages as the jury may determine,

    c. Awarding against all Defendants reasonable attorney's fees and costs, and,

11

d.  Granting such other and further relief as to the Court seems just and

proper.

Dated: April 4, 2008
        White Plains, N.Y.

LOVETT & GOULD, LLP
By:
Kim Berg (KB1425)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

12

**Exhibit "H"**

# BY-LAWS

## OF THE

**PROFESSIONAL FIRE FIGHTERS ASSOCIATION**

of the

**CITY of WHITE PLAINS, N.Y., INC.**

**LOCAL 274**

of the

**INTERNATIONAL ASSOCIATION of FIRE FIGHTERS**

**ORGANIZED MARCH 28 1929**

(revised July 1996)

# TABLE OF CONTENTS

ARTICLE I Organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 1

ARTICLE II Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 2

ARTICLE III Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 3

ARTICLE III (cont)Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 4

ARTICLE III (cont)Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 5

ARTICLE IV Honorary Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 6

ARTICLE V Due and Assessments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 7

ARTICLE V (cont)Dues and Assessments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 8

ARTICLE VI Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 9

ARTICLE VII Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 10

ARTICLE VIII Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 11

ARTICLE VIII (cont)Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 12

ARTICLE VIII (cont)Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 13

ARTICLE VIII (cont)Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 14

ARTICLE VIII (cont)Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 15

ARTICLE VIII (cont)Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 16

ARTICLE IX Nominations and Elections of Officers . . . . . . . . . . . . . . . . . . . . . PAGE # 17

ARTICLE IX (cont)Nominations and Elections of Officers . . . . . . . . . . . . . . . . PAGE # 18

ARTICLE IX (cont)Nominations and Elections of Officers . . . . . . . . . . . . . . . . PAGE # 19

ARTICLE IX (cont)Nominations and Elections of Officers . . . . . . . . . . . . . . . . PAGE # 20

ARTICLE IXa Delegates and alternates to conventions . . . . . . . . . . . . . . . . . PAGE # 21

ARTICLE X Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 22

ARTICLE X (cont)Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE # 23

## TABLE OF CONTENTS

ARTICLE XI Officers Fund .......................................... PAGE # 24

ARTICLE XI (cont)Officers Fund ................................... PAGE # 25

ARTICLE XII Amendments .......................................... PAGE # 26

ARTICLE XIII General ............................................. PAGE # 27

ARTICLE XIV Committees .......................................... PAGE # 28

ARTICLE XV Order of Business ..................................... PAGE # 29

ARTICLE XVI General Fund ........................................ PAGE # 30

ARTICLE XVII P.F.F.A. Budget ..................................... PAGE # 31

ARTICLE XVIII Retirement and Death Benefit Fund ..................... PAGE # 32

ARTICLE XVIII (cont)Retirement and Death Benefit Fund .............. PAGE # 33

ARTICLE XVIII (cont)Retirement and Death Benefit Fund .............. PAGE # 34

ARTICLE XIX Reserve Fund ........................................ PAGE # 35

ARTICLE XIX (cont)Reserve Fund ................................... PAGE # 36

ARTICLE XIX (cont)Reserve Fund ................................... PAGE # 37

ARTICLE XX Deleted .............................................. PAGE # 38

ARTICLE XXI Insurance Rules and Regulations ....................... PAGE # 39

ARTICLE XXI (cont) Insurance Rules and Regulations .................. PAGE # 40

ARTICLE XXI (cont) Insurance Rules and Regulations .................. PAGE # 41

## ARTICLE I
## ORGANIZATION

### SECTION I

The name of this organization shall be known as the Professional Fire Fighters Association, of the City of White Plains, N.Y. Inc., Local 274 of the International Association of Fire Fighters.

### SECTION II

Reference in this Constitution and By-Laws to "Local" or "Local Union", or "Association" shall refer to the local as set forth in Section I above, and references to "International" shall refer to the "International Association of Fire Fighters.

### SECTION III

This Local Union, it's officers, representatives and members shall recognize, observe and be bound by the provisions of the Constitution and By-Laws of the International, and the interpretations rendered by the International *General* President; the resolutions, decisions and directives of the Executive Board of Officers of the International, when made in conformity with the authority granted by the Constitution and By-Laws of the International; and the resolutions adopted and policies established by the Delegates at conventions. Article 13 of the Constitution and By-Laws of the International is recognized as providing the basic rules governing the local.

## ARTICLE II
## PURPOSES

*The following are the purposes for which this organization has been organized.*

### SECTION I
To foster and encourage a high degree of skill and efficiency among it's members of the Fire Department of the City of White Plains, N.Y.

### SECTION II
To bargain through representatives of their own choosing for proper working conditions for it's members and adequate compensation for duties performed.

### SECTION III
To cultivate a spirit of friendship and loyalty among it's members.

### SECTION IV
The creation of Benefit Funds which shall consist of donations, bequests and income from any source that the organization may agree upon, which said funds shall be vested and expended for the benefit of the members of the organization

### SECTION V
Once a year the President shall provide a written State of the Union Address to all members.

## ARTICLE III
## MEMBERSHIP

### SECTION I

Any newly appointed member of the White Plains Fire Department, shall not be refused membership in this Association or upon acceptance, be discriminated against because of race, color, creed, national orgin, sex or by reason of disability. Said new appointee shall not belong to a volunteer fire department anywhere which will cause overlapping responsibilities with any IAFF Local Union. Newly appointed members shall sign a payroll deduction card authorizing the City of White Plains to deduct from his paycheck the amount certified by an officer of the Association as Association dues or the equivalent. He shall also authorize the Association as his sole and exclusive bargaining agent and representative for the purpose of negotiations and grievance adjustments.

He shall become a permanent member signing a payroll deduction card for dues check-off.

All new members of the Association shall have up to thirty one days after appointment to pay an initiation fee of $25.00 after which the member becomes eligible to vote and hold office. Also within thirty one (31) days after appointment, he shall be sworn in and his name shall be placed on the rolls.

Failure to pay the initiation fee within the designated period shall be treated as failure to pay an assessment.

### SECTION II

If a member fails to pay his dues, assessments or special assessments by the 15th day following the month such dues are payable, he shall be notified by the Secretary-treasurer by registered mail that he is delinquent and will be automatically suspended and lose his good standing if payment is not made within sixty (60) days following such notification. A member who is delinquent, under suspension, or otherwise not in good standing is not entitled to any voice or vote in the local. When suspended, he shall forfeit all rights to any benefits and his name shall be stricken from the membership roll. Should any person whose name has been stricken from the membership roll for any reason desire to be reinstated to membership, he must make written application within a period of thirty (30) days from the date of termination of his membership. Each such application must be submitted to the Secretary-Treasurer. Upon receipt of such application, the Secretary-Treasurer will have posted a notice concerning said application with the date of the regular meeting that said application will acted on. At the closest regular meeting following receipt of such application, the membership may, by a three fourths (3/4) majority vote, approve the reinstatement application. Any such former member who has had his application for reinstatement approved, must furnish to the Association a certificate from a physician named by the Executive Board which shall set forth the mental and physical condition of such applicant, and pay to the Secretary-Treasurer all  back dues and assessments,

Page  #3

## ARTICLE III (cont)
## MEMBERSHIP

### SECTION II (con't)

including those which may of accrued during his absence from membership in the Association, plus a reinstatement fee determined by the Executive Board.

Any former member who is reinstated to membership must remain a member in good standing for a period of six (6) months following the date of his reinstatement before he shall be entitled to receive any financial benefits from this Association. If the application for reinstatement is not approved, the non-member may continue his efforts at future meetings by resubmitting his application in the prescribed manner.

### SECTION III

Any member who resigns from the Fire Department shall cease to be a member of this Association and shall forfeit all rights to any benefits therefrom. Any member who is dismissed from the Fire Department shall cease to be a member of this Association and shall forfeit all rights to any benefits therefrom, except where such dismissal is deemed by the Executive Board to be due to anti-union-animus. In this case full rights and benefits shall be extended in a way deemed appropriate by the Executive Board.

### SECTION IV

Upon being duly accepted to membership in this Association, the person so elected must take the following oath. Such oath shall be administered to the electee by the Association President or the highest ranking officer present at the beginning of the first meeting that the electee shall attend. The electee will repeat the Oath, word for word, filling in his name in the place indicated or in the event Of several electees being sworn in at the same time, they may simply hold up their right hands, repeat their names at the place indicated and say the words "I DO " at the end of the oath. The acceptance of the electee or electees into the Association will be contingent upon his or their swearing (or affirming) this oath.

*I,_____NAME_____, do solemnly swear to uphold, to the best of my ability, the Constitution of this Association,and I will support all of it's duly authorized activities and functions and will not reveal any of it's confidential business to non-members. I further swear that I am not, nor will ever be a member of any organization opposed to the principals of the Constitution of these United States and the International Association of Fire Fighters. All this I state of my own free will, before God, without any mental reservations.*

ARTICLE III (cont)
MEMBERSHIP

## SECTION V

A member who is elected as an officer of the International Association of Fire Fighters or the New York State Fighters Association, or who is elected or appointed as a representative of or to an affiliated labor organization, shall retain his membership in the local.

## SECTION VI

Any member forced by law to resign from this Association in order to assume or remain in the rank of Chief of Department, shall receive all benefits that he would normally be entitled to had he retired from the Department while a member in good standing. Said resignation shall take effect on the day he is sworn in as Chief of Department or in the case of an incumbent, on the date he submits his resignation from the Association in compliance with the law.

Under Resolution 22, adopted at the 1994 Convention in Detroit, Michigan, by the International Association of Fire Fighters, withdrawal cards may be granted to those who are separated from the fire service, or who are precluded by law or contract from maintaining union membership by virtue of their fire department position. Furthermore, no reinstatement fee will be charged upon re-entry into the organization.

## SECTION VII

It is the position of this Association that no member of the Association shall not perform voluntary major maintenance of any kind, and if a member is found performing voluntary major maintenance, his name and actions shall be forwarded to the Board of Trustees for action in accordance with Article IX, Section XIII, of the By-Laws (misconduct).

## ARTICLE IV
## Honorary Membership

### SECTION I

The retired membership of this Association will consist of any member in good standing, who retires as a member of the White Plains Fire Department. Who agrees to abide by the appropriate sections governing his/her membership in these By-Laws.

The rolls of the membership of the Professional Fire Fighters Association shall carry this member and identify him/her as "RETIRED", with the date of his/her retirement.

The retired member will pay dues to the Association as herein specified, based upon the number of completed years which shall have passed from the date of his/her retirement to July 1st. Which shall be the date upon which his/her dues shall be paid.

1 to 9 years ---------------- $ 100.00
10 to 24 years ---------------- $ 75.00
25 or more years -------------- $ 50.00
City Pensioner ---------------- Complimentary
                                    Membership

Members with less than one full year of retirement, shall pay a prorated sum which shall be computed based upon the portion of the year represented by the number of months between his/her retirement date and the next July 1st.

### SECTION II

For meritorious service to the Association or distinguished public service persons may be elected to honorary membership by majority vote of the Executive Board or The Association Membership. A Honorary Membership card shall be issued to all those who receive this Honor. Such membership shall entail no payment of initiation fees, dues or other charges, and shall convey no voice or vote in the affairs of the Association. Such memberships are subject to revocation for good cause.

Retired members of this Association who have passed away, shall have a grave marker placed at their grave site on Labor Day.

## ARTICLE V
### Due and Assessments

**SECTION I**

A. Each member shall pay to the Secretary-Treasurer through payroll deductions, dues in the amount designated by a majority vote of the membership. Increases in rates of initiation fees, dues and assessments require notice of such proposed increases to be given to the members in good standing at least thirty (30) days in advance of the date set for a vote. On the date set, the proposed increase shall be voted on by majority vote of the members in attendance in good standing, by secret ballot, at a regular or special meeting.

Members scheduled to be on duty at the time of the scheduled meeting shall be entitled to a secret ballot at a time and place designated by the Secretary-Treasurer, and said ballot must be deposited with the Secretary-Treasurer at least one (1) day prior to the scheduled meeting. The Secretary-Treasurer shall forward said ballot to the scheduled meeting.

B. The dues rate is 1 & 1/2 % of top pay for a Fire Fighter.

**SECTION II**

In each year when the Association shall conduct an annual affair for the purpose of raising funds for the benefit of the Association, each member shall pay, in addition to the dues provided for in Section I of this Article, within thirty (30) days following the date of the Annual Affair, the sum of ten ($10.00) dollars, but any member who shall sell tickets for such Annual Affair in an amount not less than ten ($10.00) dollars shall be relieved of the payment of such further sum of ten ($10.00) dollars.

**SECTION III**

Any and all monies due the Association in connection with any Annual Affair or otherwise, shall be paid to the Association by any member receiving the same within thirty (30) days of the receipt thereof. If these monies are not received by the Secretary-Treasurer within the time allotted by this Section, then a fine of twenty-five ($25.00) dollars shall be added to the outstanding sum and the member shall become in "arrears" where he shall be covered by Article III, Section II of these By-Laws.

**SECTION IV**

Effective July 1, 1980, a special assessment of Fifty ($50.00) Dollars per fiscal year shall be paid by all members of this Association to the Secretary-Treasurer by July 1st. of each year.

<u>ARTICLE V (cont)</u>
<u>Dues and Assessments</u>

<u>SECTION IV</u> (cont)

This assessment shall be waived for any member who attends two (2) regular membership or special meetings within the fiscal year. This assessment is also waived for retired members.

Credit for attendance at such meetings shall be given to members arriving no later than thirty (30) minutes after the calling of the roll.

Members shall abide by Article VI, Section IV, of the By-Laws. If a meeting is held in a Fire Station, the members on duty shall have all the rights at said meeting, but will not receive credit for a meeting attended towards the waiver clause.

The Annual Budget meeting, which is held in June, shall be combined with the regular Membership Meeting, also held in June, to form a single meeting. Any member attending this meeting will get credit for one meeting.

## ARTICLE VI
### Meetings

### SECTION I

There shall be held when practical a regular meeting of this Association on the first Tuesday of each month. The time and place of these meetings shall be announced at the previous meeting. If the regular meeting date must be changed, such notice must be made at the earliest possible time.

### SECTION II

The regular meeting in May shall be designated as the annual meeting of this Association.

### SECTION III

Fifteen (15) members shall constitute a quorum for the transaction of business of this Association.

### SECTION IV

No member shall leave a meeting without the permission of the Chairman.

### SECTION V

Every member in good standing shall have the right to attend any meeting and to participate in such meeting in accordance with the recognized rules as set forth in the Manual of Parliamentary Procedure adopted by the Association. Members shall conduct themselves in such a manner as not to interfere with the legal or contractual obligations of the Association.

### SECTION VI

The rules contained in ATWOOD'S RULES FOR MEETINGS shall govern the meetings of this local.

### SECTION VII

Special Meetings of this Organization may be called by the President when he deems it for the best interest of the Organization.

He shall, upon petition in writing of fifteen (15) members in good financial standing call a special meeting to transact such business as is necessary. All stations shall be notified in writing of such special meetings. The notice shall state the business to be considered at such meetings, and no other business than that stated shall be in order at such meetings.

# ARTICLE VII
## Officers

### SECTION I

The officers of this Association shall be as follows: President, Vice-President, Secretary-Treasurer, Assistant Secretary-Treasurer, six (6) Trustees and the Welfare Chairman.

All principal officers shall be elected for a term of two (2) years. The President, the Welfare Chairman and the Assistant Secretary-Treasurer shall be elected so as to commence their terms in January, on all even numbered years. The Vice-President and the Secretary-Treasurer shall be elected so as to commence their terms in January, on all odd numbered years.

Trustee terms of office shall be as follows: Three (3) years with two (2) Trustees being elected each year and beginning their terms in January for a three (3) year term as scheduled.

| | 1995 | 96 | 97 | 98 | 99 | 00 | 01 | 02 | 03 | 04 | 05 | 06 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | | | E | | | E | | | E | | | E |
| B | | E | | | E | | | E | | | E | |
| C | E | | | E | | | E | | | E | | |

\* E = Elections

## ARTICLE VIII
### Duties of Officers

**SECTION I**

It shall be the duty of the President to preside at all General Membership Meetings and all Meetings of the Executive Board. He shall be a member of all committees.

He shall see that all vacancies in the Executive Board be filled by elective votes of the entire membership.

He shall submit, at each regular meeting, a report of the official acts, together with his recommendations or suggestions for such improvement or changes in the conduct of the affairs of this Association as, in his judgement, are necessary or desirable to the advancement of it's best interest.

He shall appoint all committees.

He shall have authority to call a meeting of the Executive Board.

In addition to the foregoing, he shall perform such other duties as may be delegated or assigned to him by the Executive Board or by the membership of this Association.

He shall discharge on behalf of the local union such duties as may imposed upon him by applicable Federal, State, or Municipal authorities.

He shall cause to be maintained by the local union such records as the law requires to be kept in support of reports filed by it.

He shall cause to be published the results of all elections.

He shall be entitled to vote on the elections of officers.

He shall appoint an elections committee which shall be responsible for distributing and tabulating election  ballots.

He shall attend all legislative matters or delegate such powers to other members of this Association.

He shall see that an agenda be posted in each fire house prior to the monthly general membership meeting.

The President shall assign, on a quarterly basis a member(s) of the Executive Board to vist the Fire Stations to speak to the members.

ARTICLE VIII (cont)
DUTIES of OFFICERS

## SECTION II

It shall be the duty of the Vice-President to act as President in the absence of the latter, and in case of a vacancy in the office of President, shall become President for the balance of the unexpired term. He shall aid and assist the President in conducting the meeting, and, in his absence, shall have full power of the President.

He shall also perform such duties as the President may, from time to time, delegate to him, and such other duties involving his office.

## SECTION III

It shall be the duty of the Secretary-Treasurer to keep an accurate record of the proceedings of all meetings in the Minute Book. He shall read all communications, bills, reports, petitions, etc.. He shall keep an accurate roll of the members of the Association.

He shall carefully preserve all papers and all other articles entrusted in his care and shall not lend any papers,books nor documents belonging to the Association without the permission of the Executive Board.

He shall disburse the funds of the Association only at the direction of the members at a regular or special meeting or upon authority given him by the Board of Trustees. All transactions requiring payment of funds by this Association shall be done by the Secretary-Treasurer.

He shall make a complete report of all monies received and paid out by him monthly.

The Secretary-Treasurer shall discharge on behalf of the local Union such duties as may be imposed upon him by applicable law, including the execution and filing of any reports to Federal or State authorities, and he shall cause to be maintained by the local Union such records as the law requires to be kept in support of reports filed by it.

He shall be responsible for preparing, distributing and collecting of all matters requiring ballot vote.

He shall deposit all money received by him in the bank selected by the Board of Trustees, in the name of the Association.

It shall be the responsibility of the Secretary-Treasurer to post any and all notices which may be derived from any of the following sources, Union Meetings, Special Meetings and Executive Board Meetings. And that these notices are posted in all Fire Stations and in the Offices of all day workers within three (3) days of such meetings. Any notices regarding activities of any Committee, will be the responsibility of the Chairman of that Committee. This will be considered proper notice and it will be every member's duty to stay abreast of all Union notices by reading the Union's bulletin boards in the Fire Stations.

ARTICLE VIII (cont)
DUTIES of OFFICERS

## SECTION IV

The Assistant Secretary-Treasurer shall perform the duties of the Secretary-Treasurer in the absence of the Secretary-Treasurer and shall perform such duties as the Secretary-Treasurer may direct with the approval of the Executive Board. His signature will be filled with the appropriate banks for co-signing check and co-signing withdrawals when necessary.

He shall take the attendance at all Regular Union meetings, Special Meetings and Executive Board Meetings. He shall post the attendance of these meetings at the beginning of every quarter
(JAN., Apr., July and Oct.)

That on all formal votes on all issues, the Assistant-Secretary shall record the total vote and the names of all those voting in the affirmative, all those voting in the negative and all those abstaining.

## SECTION V

DELETED SERGEANT AT ARMS ON 7-1-87.

## SECTION VI

It shall be the duties of the Board of Trustees to keep a general supervision over the financial affairs of this Association.

They shall select the banks in which to deposit the funds, and make necessary arrangements for the drawing of vouchers. They shall fix the amount of bond of the Secretary-Treasurer, and procure same from a reliable bonding company.

They shall elect at their first meeting in each calendar year, a chairman and secretary.

They shall keep a correct record of their proceedings.

It shall be the duties of the Board of Trustees to investigate all financial transactions made on behalf of this Association and insure at all times that these transactions are done in the best interests of the Association.

They shall recommend the amount of assessments to be paid by the members, subject to the approval of the members. All matters of dispute and all action against members shall be referred to the Board of Trustees for investigation. The Board of Trustees shall transmit their findings and recommendations to the Executive Board for farther action. Final disposition shall be in accordance with Article IX,Section XIII of the By-Laws.

## ARTICLE VIII (cont)
## DUTIES of OFFICERS

### SECTION VI (cont)

They shall audit the accounts of this Association, at the expiration of each half-year or more often if necessary. They shall verify each and every statement and account, balance the books of the Secretary-Treasurer and certify the correction of the same.

It shall also be their duty to ascertain that the Secretary-Treasurer has closed and balanced his accounts and receipts are produced for payment.

All officers and members having in their possession any books or money relative to the accounts of this Association shall produce same before the Board of Trustees at the time name by them.

The Chairman of the Board of Trustees shall be the presiding officer in the event of the President and Vice-President vacating their respective offices. He shall call a special meeting as soon as possible, for the election of the vacated offices.

### SECTION VII

The Executive Board shall consist of the President, Vice-President, Secretary-Treasurer, Assistant-Secretary-Treasurer, Welfare Chairman, and the Board of Trustees.

The President shall be the Chairman of the Executive Board.

The Board shall render a report of the meetings with minutes to the membership at the regular meetings of this Association.

The Executive Board shall establish travel expenses of the Association. When a member or members are delegated by this Association to travel or seek lodgings other than own, they shall be compensated with such funds as necessary to be consistent with the cost of living, and the necessary expenses of the activities involved.

### SECTION VIII

All officers and employees of the Local who handle funds or property of the Local shall be bonded in such amounts as may be required by the Board of Trustees and the International Secretary-Treasurer, in compliance with applicable law, the expense of which shall be borne by the Local and the International.

Any sum exceeding seven hundred and fifty ($750) dollars for any one purpose which is to be disbursed from the funds of this Association, must be approved at a general or special meeting and then be referred to the Executive Board for final approval.

ARTICLE VIII (cont)
DUTIES of OFFICERS

SECTION VIII (con't)

The Executive Board will act upon such motion as soon as possible and in no case shall they delay such vote beyond the date of the next meeting following the receipt of such financial motion.

If the financial motion is approved, the necessary transactions may take place at once. If the financial motion is disapproved, a written report must be submitted from the Executive Board to the Secretary-Treasurer outlining the reasoning for such disapproval. Upon the report of the Secretary-Treasurer at the next general or special meeting, a majority of the members present may challenge the report of the Executive Board. The financial motion in question shall then go out to ballot. A two-thirds (2/3) majority vote of the entire membership will be required to carry the motion.

Section VIII may be waived if at such general or special meeting a majority of the entire membership is present and desires by a three-fourths (3/4) vote to waive this Section VIII.

SECTION IX    DUTIES of the WELFARE CHAIRMAN

The Welfare Chairman shall be responsible for the proper administration, according to the rules and regulations adopted for the following plans:

A) The PFFA Life Insurance Plan.
B) The Major Medical Reimbursement Plan.
C) The PFFA Dental Plan.
D) Any future Benefit Plan that may be adopted by this Association.

It shall also be the duty of the Welfare Chairman to:

A) Keep all necessary records.
B) Compile a list of all names and monetary benefits to be received under the Major Medical Plan each fiscal year
C) Disseminate pertinent information and post notices as required.
D) Make an annual report of disbursements and the financial status of the committee with any recommendations deemed advisable.
E) Turn all records and pertinent information over to the succeeding Chairman.
F) Any disputes arising from the aforementioned shall be resolved according to Article VIII, Section VI of our By-Laws.

## ARTICLE VIII (cont)
## DUTIES of OFFICERS

SECTION X  (Signatories)

Two signatures shall be required for any withdrawing of monies or any payment of monies.

The following combinations of Officers` signatures shall be  valid for such purposes.

1. President and Secretary-Treasurer or
2. President and Asst. Secretary-Treasurer or
3. Vice-President and Secretary-Treasurer but not the Vice-President and Asst. Secretary-Treasurer and not the Secretary-Treasurer and Asst. Secretary-Treasurer, and not the President, and Vice-President.

# ARTICLE IX
## Nominations and Elections of Officers

### SECTION I

All terms of office shall run through December thirty first (31) and nominations for offices shall be taken at the October and November General Membership Meeting.

### SECTION II

In order for a member to be eligible for nomination for office, he must be present at the meeting when he nominated or submit a letter to the Secretary-Treasurer in advance of the meeting, declaring his intention to accept a nomination for a specific office. The nominees present at the meeting shall consult with Secretary-Treasurer at the close of business at that meeting and declare their intentions of accepting or declining the nominations. If a member does not consult with the Secretary-Treasurer at the close of business at that meeting, it shall be assumed that he declines the nomination. The Secretary-Treasurer shall be instructed to have an official ballot with the names of the candidates thereon.

### SECTION III

No member shall be eligible for office in this Association unless he is in good financial standing in dues, loans, assessments and fines.

### SECTION IV

No funds received by this local through initiation fees, dues or Assessments or otherwise shall be contributed or applied to promote the candidacy of any persons in elections of offices.

### SECTION V

All members in good standing shall be given at least fifteen (15) days advance notice, in writing, of the date, time and place at which nominations shall be made. Any member in good standing may nominate eligible members for office.

Elections shall be made by secret ballot. In the event that only one nominee accepts the nomination for any given office, the Secretary-Treasurer shall cast the single vote for election to such office. In the case of an election to fill one vacancy, and a member is running unopposed, no ballots will be distributed. In a General Election, only those offices being contested shall be listed on an official ballot with the names of the men running for election and the ballots will be distributed to all members in good standing. If, in a General Election, there are no opposing candidates for all offices, no ballots will be distributed and the Secretary-Treasurer shall cast the single vote for each office. There shall be no voting by proxy in any election of Local Union offices.

ARTICLE IX (cont)
## NOMINATIONS and ELECTIONS of OFFICERS

### SECTION VI
Each candidate for office shall be entitled to appoint one observer who shall be permitted to witness the manner of distribution and casting of ballots and attend the meeting of the Election Committee at which the votes are tabulated.

### SECTION VII
The ballots and all other records of an Election of Officers shall be preserved by the Secretary-Treasurer for one (1) year.

### SECTION VIII
No member shall hold more than one (1) office in this Association at the same time. The office of Secretary-Treasurer is designated as one office.

### SECTION IX
Only members in good financial standing in this Association will be allowed to cast a ballot. The election period will be designated by the Secretary-Treasurer with the approval of the Executive Broad.

"Election Days" shall be designated when all members in good financial standing can vote for the candidates. Times, dates and places of voting shall be announced after due consideration is given to the fact that all members of the Association must be given ample opportunity to vote. The Secretary-Treasurer shall be responsible to see that each member receiving a ballot signs for same.

The Secretary-Treasurer shall seal the ballot box at the close of elections and return the ballots to the Election Board where they shall count the ballots.

The candidates receiving a plurality of votes shall be declared elected. New officers may be installed at the direction of the Executive Board but no later than the regular meeting in January.

In the event of a tie vote, a run-off election shall be held prior to the next monthly meeting between the tied candidates.

A retired member will not have a vote in nor be allowed to run for office as an officer of the Professional Fire Fighters Association. In order this paragraph to be amended,changed or rescinded. It will require a 2/3 vote of the entire membership.

## ARTICLE IX (cont)
## NOMINATIONS and ELECTIONS of OFFICERS

### SECTION X

The officers elected shall be installed at the regular meeting in January.

After being duly elected to office in this Association, or being appointed to fill any unexpired term of office in this Association, such electee or appointee will swear the following oath, such oath to be administered by the Association President or the highest ranking officer present at the meeting when such electee or appointees are to be inducted into office. The inductee may repeat the oath word for word, filling in his name or title at the indicated places, or in the event of several inductees being sworn in at the same time, they may simple hold up their right hands, repeat their names and titles at the places indicated and say the words, "I DO" at the end of the oath. The adeptness of the inductee as an officer of this Association will be contingent upon his or their swearing or affirming this oath".

*I,(___NAME___) do solemnly swear to discharge my duties as (NAME OF OFFICE) of this Association, in a willing manner and to the best of my ability, in strict accordance with the Constitution and By-Laws of this Association, as interpreted by a majority ,of the members. I will at no time divulge any matters concerning this Association to non-members without proper authority, and I will at all times strive to uphold and enforce the By-Laws of this Association, as currently set forth. I take this oath of my own free will, before God, without mental reservation.*

Any member who has been elected to office and falls to be present for for installation, unless prevented by illness or other unavoidable excuse, shall forfeit the office and same shall be declared vacant by the installing officers. An election shall be held to fill vacancy.

### SECTION XI

Any member resigning or declining office after he has been elected or refuses to hold a higher office, due to the creation of a vacancy shall not be eligible to hold office in this Association for a period of two (2) years from said resignation or declination.

### SECTION XII

Any officer absenting himself from three (3) consecutive meetings except where an excuse is offered and accepted by two-thirds (2/3) of the members present at a regular meeting,such office shall be deemed vacated, and an election to fill same shall be held.

## ARTICLE IX (cont)
## NOMINATIONS and ELECTIONS of OFFICERS

### SECTION XIII

Any member charged with misconduct as defined in Article XV of this International Constitution and By-Laws shall be served with written specific charges as required in Article XVI of the Association Constitution and be given a reasonable time to prepare his defense and afforded a hearing as provided in Article XVII of the Association Constitution.

Appeals may be made in accordance with Article XVIII of the International Constitution and By-Laws, such appeal must be filed with the President of the Association within Thirty (30) days of the action to be appealed.

### SECTION XIV

Any member, upon request, that is on vacation, compensatory time, death or sick leave, or off for one complete working tour for any reason and is in good financial standing in this Association shall have the right to vote by Absentee Ballot, at least one (1) week prior to the election day.

### SECTION XV

Any officer of this Association shall be subject to charges for improper conduct or neglect. If the charges are proven, the officer shall be removed from office by two-thirds (2/3) majority vote of the membership. Officers must receive such charges made in writing five (5) days prior to a meeting.

# ARTICLE IXa
## Delegates and alternates to conventions

### SECTION I

When delegates(s) and/or alternate(s) to conventions are authorized by the Association, they shall be as follows:

TWO DELEGATES: The President and Secretary-Treasurer by virtue of their offices.

ONE DELEGATE:   The President by virtue of his office

ADDITIONAL DELEGATE(S) and/or alternate(s): Members of the Executive Board by virtue of their election to offices, as designed by majority vote of the entire Executive Board.

### SECTION II

Elections for delegate(s) and/or alternate(s) shall be governed by Article IX of these By-Laws, where applicable.

# ARTICLE X
## BENEFITS

### SECTION I

Retired members shall be presented with a service badge or watch designating the number of years of his service. The price of these tokens shall be designated by the membership.

### SECTION II

Except as stated in Section V of this article, the amount stated in Section X of the Retirement and Death Benefit Fund shall be paid in full settlement of all the obligations of this Association to the proper beneficiary of a member is good standing, in the event of the death of such member. Any and all members of this Association (retired or active) shall receive only one payment in their lifetime under these provisions or any other provisions of the By-Laws from this Association.

### SECTION III

A suitable spray of flowers or other object deemed appropriate by the Executive Board shall be provided in the event of death for any member retired member,a member of any Association members family: father, mother, father-law, mother-law, guardian, wife, child, brother or sister.

### SECTION IV

All members and their spouses while hospitalized shall be entitled to rent a television set for an unlimited time. The fees will be paid by the Association.

### SECTION V

Military Service, the dues of any member of this Association who enters Military Service of the United States of America shall be waived for the duration of such military service.

The sum of $1,500.00 shall be paid in full settlement of all obligations of this Association to the proper beneficiary of a member in good standing in the event of the death of such member occurring while in the military service of the United States of America.

The sum of $1,000.00 shall be paid to a member in good standing, in full settlement of all obligations of this Association in the event such member is discharged from the military service of the United States of America and is unable to return to duty due to a disability incurred while in such Military Service.

ARTICLE X (cont)
BENEFITS

## SECTION VI Major Medical Reimbursement

Active members may be reimbursed a portion of their Major Medical expenses as determined by the Welfare Chairman with the approval of the Executive Board. All medical claims shall be submitted to the Welfare Chairman by April 15th, and said claims shall be those medical expenses accumulated in the prior calendar year. Extensions may be granted by the Welfare Chairman with the approval of the Executive Board. Any dispute arising from application or interpretation of this provision shall be treated under Article VIII, Section VI of these By-Laws.

## SECTION VIa

To assure to all members an equitable administration of the Major Medical reimbursement, as herein provided, there shall be no reimbursement of that portion of major medical expenses when such reimbursement will result in a duplication of benefits received, to be received or to which the member shall be entitled to receive from any source whatever.

It is intended that where a member shall have received, will resolver be entitled to receive, that portion of major medical expenses deemed deductible under the major medical plan maintained by the Association from the following sources:

      A. Privately maintained medical plan of member;
      B. Benefits received under General Municipal Law, 207-A;
      C. Benefits recovered from "no-fault"proceeds of insurance;

There shall be no reimbursement as provided under this Article X. All determinations regarding duplication of benefits shall be by decision of the Welfare Chairman subject to the approval of the Executive Board.

# ARTICLE XI
## OFFICERS FUND

### SECTION I
The Officers Fund shall be an amount as determined by secret ballot by a majority vote of the members in good standing at a regular or special meeting.

### SECTION II
The amount shall be as follows:

| | |
|---|---|
| President, | 45% of top pay of a fire fighter. |
| Vice-President, | 10% of top pay of a fire fighter |
| Sect'y-Treas., | 25% of top pay of a fire fighter |
| Asst.Sect'y-Treas, | 8% of top pay of a fire fighter |
| Welfare Chairman, | 25% of top pay of a fire fighter |
| Chmn. Bd.Trustees, | 5% of top pay of a fire fighter |
| Five Trustees, | 4% of top pay of a fire fighter |

### SECTION III
In addition, the Chief Negotiator for the Association, shall be paid at the rate of ninety ($90.00) dollars per meeting, and two other permanent negotiators, at the rate of eighty ($80.00) dollars each, per each meeting.

### SECTION IV
The Officers Fund and the Negotiating Committee Fund shall be disbursed in a manner prescribed by the Board of Trustees.

### SECTION V Per Diem Payments:
Members of the Executive Board shall be entitled to a Per Diem payment of $80.00, for attending Association functions such as I.A.F.F and N.Y.S.F.F.A Conventions,Legislative Conferences and Health and Safety Seminars and Symposiums. There shall be a maximum of 2 members for all I.A.F.F functions and a maximum of 3 members for N.Y.S.F.F.A. functions. No member shall be entitled to this payment if they are on Union Release Time.

## SECTION VI

If an Officer absentence himself from five (5) or more meetings during the course of the calendar year, he shall have deducted an amount equal to one twenty-second (1/22) of his annual salary or an amount equal to his salary divided by the number of meetings that year, which ever is lower, for each meeting missed after four (4). This shall not be construed to include missed meetings due to the members conflict with his work schedule. The Board of Trustees shall be empowered to make decisions and resolve disputes arising from the application of this section including but not limited to payment of salaries to Officers on extended sick leave.

## ARTICLE XII
## AMENDENTS

SECTION I

The By-Laws of this Association may be amended, or additions made only in the following way:

1.  A proposed amendment or addition to the By-Laws shall be referred to the standing By-Law Committee for study and recommendation.

2.  A proposed amendment or addition to the By-Laws may be submitted to the By-Law Committee at any time and the By-Law Committee will act on each proposed amendment or addition as soon as possible. However, once the date of a By-Law Committee meeting is set and a posting of the date and hour of the meeting in each Fire House has been done, then at least seventy (72) hours advance receipt from the meeting date and hour as posted shall required of all proposed amendments and additions if they are to be deemed acceptable for consideration at the aforementioned meeting.

3.  All proposed amendments or additions shall be clearly typewritten and at least doubled space to allow for changes by the committee.

4.  All proposed amendments or additions where a cost factor is involved shall have the cost factor affixed to the proposal by the Secretary-Treasurer prior to submission to the By-Law Committee.

5.  All proposed amendments or additions must state the By-Law location and current By-Law language of the effected article and/or section.

6.  For a proposed amendment or addition to be adopted, said amendment or addition must have a two thirds (2/3) affirmative vote of the votes cast at a regular or special membership meeting. Members scheduled to be on duty at the time of the scheduled meeting shall be entitled to be a written vote at a time and place designated by the Secretary-Treasurer. All written votes must be in one (1) day prior to the meeting. The Secretary-Treasurer shall forward the written votes to the meeting. If a two thirds (2/3) affirmative vote is not received, said amendment or addition shall be deemed defeated.

7.  Fifteen days prior to the membership meeting, the following items must be posted in each fire station and fire bureau: The present by-law, the proposed amendment or addition, The By-Law Committee's recommendation and the designated voting date and place.

SECTION II

A proposed amendment to this Constitution or By-Law made under its provisions shall be submitted for approval to the International President prior to its printing, issuance or effectiveness, after first being adopted by the membership.

## ARTICLE XIII
## GENERAL

### SECTION I
The fiscal year of this Association will be July, first (1) through June thirtieth (30)

### SECTION II
The By-LAWS of this Association shall not be suspended at any time.

### SECTION III
During the month of December, all possible cooperation will be given to all newly elected officers in the effort to maintain an efficient organizational transfer of authority.

### SECTION IV
This Association shall adopt an Official Seal, which shall be deposited with the Secretary-Treasurer.

### SECTION V
This Association shall operate on an annual established budgetary system, have a retirement and death benefit fund, a general fund, a ball and/or entertainment fund, an insurance fund and a benefit and welfare fund, with rules and regulation established and maintained by the membership.

## ARTICLE XIV
## COMMITTEES

*The President shall appoint the following standing committees:*

### SECTION I

A Graves Decorating Committee consisting of three (3) members whose duty it shall be to decorate the graves of the departed members of the Association on Decoration Day of each year. Each grave shall be marked by a Shield in the form of a Maltese Cross bearing the letters P.F.F.A. with an American Flag attached thereto.

### SECTION II

A Nominating Committee shall consist of one (1) member from each Fire Station. It shall be their duty to present a list of eligible candidates for all offices to the meeting. Further nominations can be made from the floor at the meeting.

### SECTION III

By-Laws
Public Relations

### SECTION IV

Special Committees shall be appointed by the President as he deems necessary; and members appointed thereto shall report at the next regular meeting of the Association or as otherwise directed.

### SECTION V

A committee will be appointed by the President from the retired members of the Association. One member of the retired members' committee will be assigned to the Executive Board to lend assistance in matters pertaining to retired members. He will not vote on the Executive Board.

### SECTION VI

The President of the Association may appoint retired member(s) of the Association to any committee as he deems necessary so long as the retired members shall not consititute a majority of the committee.

## ARTICLE XV
## ORDER of BUSINESS

### SECTION I

*The order of business of this Association shall be taken up at all meetings in this order:*

1. Calling of roll

2. Reading of the minutes of the previous meeting

3. Reading of the minutes of any special or Executive Board meeting.

4. Initiation of candidates.

5. Reading of communications and bills

6. Unfinished business/reports of committees.

7. New business.

8. Secretary-Treasurer's report.

9. Reading out of members in arrears for dues, fines and assessments.

10. Propositions for membership.

11.     A. Nominations for officers.

        B. Declaring of elected officers.

        C. Installation of elected offices.

12. Good and welfare.

13. Adjournment.

ARTICLE XVI
GENERAL FUND

## Rules and Regulations

1.   The General Fund will be the operating or central fund. All monies received or earned by this organization shall be deposited with this fund, except as stated in the Retirement & Death Fund and the P.F.F.A Insurance Fund Rules and Regulations.

2.   An accurate accounting will be kept of all monies received and disbursed by the General Fund. All monies deposited with the General Fund will be maintained and disbursed according to the Rules and Regulations of the General Fund, the Budget,Insurance Fund, Ball and/or Entertainment Fund the Retirement & Death Fund, the Benefit Fund, and the Reserve Fund.

3.   All donations received within the current fiscal year and deposited with the General Fund will remain in the General Fund as part of the budget allocation for the following fiscal year, unless donated for a specific purpose.

4.   All dues and assessments collected within the current fiscal year will be deposited in the General Fund as received. These monies will be utilized to meet current fiscal year's budgeted expenses, and specific allocations.

5.   Budget allocations will be deposited with, and disbursed through the General Fund. Transfer of monies will be made through the General Fund.

## ARTICLE XVII
### P.F.F.A. BUDGET

#### Rules and Regulations

1. The annual fiscal budget will consist of various categories of expenditures with each category's maximum expenditure allotment.

2. The maximum annual fiscal budget will be determined by adding the profits of the last annual Ball/or Entertainment, plus the receipts from donation in the last fiscal year, plus anticipated dues and assessments, plus all interest and dividends earned in the last fiscal year, plus all unspent money from previous fiscal year's budget, plus any other monies received, except allocations for and earnings from the Retirement and Death Fund and the PFFA Insurance Fund.

3. A special budget meeting shall be called in June. A majority vote of the members in attendance will be required to adopt the proposed budget. Should the budget be disapproved it will be returned to committee for re-evaluation and resubmitted.

4. Establishment of a budget exceeding the stipulations as stated in paragraph 2, will require a 2/3 vote by ballot of the entire membership to be adopted.

5. After the fiscal budget has been established and a proposal is submitted at a regular or special meeting to increase the total maximum expenditures within the current fiscal year, and the proposal is passed by a majority vote of the members present at the meeting, the proposal must then be submitted to the entire membership for a ballot vote and pass by a 2/3 vote to be adopted, except as stated in Reserve Fund items 9, 10, 13.

6. In the event a category allotment is proven insufficient, the PFFA Executive Board by a 2/3 vote and with the approval of the category chairman involved, may transfer funds from another category to supplement the deficient category. The Finance Committee Chairman will attend this meeting in an advisory capacity. If approval is not given by a committee chairman involved the matter will be referred to a membership meeting for a majority vote.

7. Prior to submitting a proposed budget the Finance Committee and the Executive Board will meet with all committee chairman or committee representatives to discuss each committee's allocations and requests.

8. Annual fiscal allocations for the Retirement and Death Fund shall be stated separately from the annual budget.

## ARTICLE XVIII
## RETIREMENT and DEATH BENEFIT FUND

### Rules and Regulations

**SECTION I**

The Finance Committee shall supervise the Retirement and Death Fund.

**SECTION II**

The Retirement and Death Fund shall consist of all monies in its deposit, plus the annual allocations and all interest and dividends and profits from this fund.

**SECTION III**

The Retirement and Death Fund will pay all payable retirement and death benefits.

**SECTION IV**

The annual Retirement and Death fund allocation will be based on 8% of the annual dues per member per year .

**SECTION V**

The Retirement and Death fund allocations will be made quarterly on October 1, January 1, April 1, and June 30th.

**SECTION VI**

The Retirement and Death Fund will maintain sufficient funds readily available to meet anticipated annual payable benefits.

**SECTION VII**

No funds may be withdrawn from the Retirement and Death Fund unless as stated in Section III of this Article.

**SECTION VIII**

Before making any changes in investments, or making investments, the Finance Committee must first receive approval by a majority vote of members present at a regular or special meeting.

**SECTION IX**

The Finance Committee will make a report of the financial condition of the Retirement and Death Fund at each June meeting.

### ARTICLE XVIII (cont)
### RETIREMENT AND DEATH BENEFIT FUND
### Rules and Regulations

SECTION X
 The sum of three thousand ($3000.00) dollars plus one hundred ($100.00) dollars for each completed year after twenty (20) years membership in this Association shall be paid in full settlement of all obligations of this Association to the proper beneficiary of a member in good standing, in the event of the death of such member.

SECTION Xa
 The sum of five thousand ($5000.00) dollars shall be paid in full settlement of all obligations of this Association to the proper beneficiary of a member in good standing, in the event of a line of duty death of said member.

SECTION XI
 A member of this Association retiring by virtue of years of service and a contributing member of this Association for twenty (20) years shall receive three thousand ($3000.00) dollars retirement benefit plus one hundred ($100.00) dollars additional for each additional year of membership in this Association.

SECTION XII
 A member of this Association retiring by virtue of years of service, or disability but not a member of this Association for twenty (20) years will receive retirement benefit based on the following schedule:

### COMPLETED YEARS OF MEMBERSHIP

| 1. | YEARS | $150.00 | 11. | YEARS | $1650.00 |
|---|---|---|---|---|---|
| 2. | YEARS | 300.00 | 12. | YEARS | 1800.00 |
| 3. | " | 450.00 | 13. | " | 1950.00 |
| 4. | " | 600.00 | 14. | " | 2100.00 |
| 5. | " | 750.00 | 15. | " | 2250.00 |
| 6. | " | 900.00 | 16. | " | 2400.00 |
| 7. | " | 1050.00 | 17. | " | 2550.00 |
| 8. | " | 1200.00 | 18. | " | 2700.00 |
| 9. | " | 1350.00 | 19. | " | 2850.00 |
| 10. | " | 1500.00 | 20. | " | 3000.00 |

## ARTICLE XVIII (cont)
## RETIREMENT and DEATH BENEFIT FUND
### Rules and Regulations

### SECTION XIII

Upon retirement any member may elect to continue membership in this R & D Fund. This can be accomplished by making an payment equal to 8% of the Annual dues of a FireFighter, which will be deposited into the R & D Fund. This amount will be paid within 10 days of the close of each quarter. If payment is not received within a timely fashion, membership in this fund will be terminated and benefits will be paid to the member or the member's beneficiary.

### SECTION XIV

The foregoing rules and regulations of the Retirement and Death Fund can be amended by a 2/3 majority of the votes cast by ballot of the entire membership.

## ARTICLE XIX
## RESERVE FUND

1. A Reserve Fund, at least equal to fifteen months salary of a top grade Fire Fighter shall be established and maintained for the proposes of meeting extraordinary and/or unbudgeted expenses.

1a. The Reserve Fund shall be established by using all funds in the Empire Federal Savings and Loan Association, Account #103.

2. The Board of Trustees and the Finance Committee shall be the custodians of the Reserve Fund. They shall oversee the maintenance of proper records. They shall be empowered to make recommendations on investments, Rules and Regulations, requirements of this fund, and transferring funds to other Organization Funds.

3. The Board of Trustees and the Finance Committee shall review the Reserve Fund at least sixty days prior to the Budget Meeting.

4. The Board of Trustees and the Finance Committee shall review Reserve Fund recommendations to the Executive Board and to the membership. Adoption of such recommendations shall require an affirmative majority vote of all members present at an Executive Board Meeting, and an affirmative majority vote of the votes cast at a regular or special membership meeting.

5. All Reserve Fund monies shall be invested in a manner making them readily available.

6. When a deficiency exists in the Reserve Fund according to the stipulations of paragraph 1., all interest and/or earnings of the Reserve Fund shall remain in the Reserve Fund.

7. Replenishing a Reserve Fund deficiency may be accomplished in one or more of the following ways, as recommended by the Board of Trustees and the Finance Committee, and approved as stipulated in paragraph 4:

   A. Dues increase and/or assessments, and pro-rated over not more than two (2) years.
   B. Budget allotments, pro-rated over not more than two (2) years.
   C. Special affairs and/or enterprises.

8.  When the Reserve Fund meets or exceeds the minimum requirements of paragraph #1, interest and/or earnings by this Fund may be used to supplement the succeeding fiscal budget.

9.  Emergency Withdrawals --After consultation with the Board of Trustees and the Finance Committee, the Executive Board may by a 2/3 affirmative vote of approval of the members, authorize withdrawal of funds from the Reserve Fund for the following purposes, providing that any special allocations, transfer of budget allocation or miscellaneous and escrow budget allocation is insufficient or impractical:

    A.  Hosting funeral service participants in the event of the death of any member of the White Plains F.D..
    B.  Representation , flowers, and other amenities in event of sickness or death of any White Plains F.D. member or officials, affiliated fire or police organization officials, civic organization officials, Government officials, and union officials.

10. Semi-Emergency Withdrawals --After consultation with the Board of Trustees and the Finance Committee, the Executive Board may by a 2/3 vote of approval of its members present at an Executive Board meeting and by a 2/3 vote of approval of the votes cast by the membership in attendance at a regular or special membership meeting, authorize withdrawal of funds from the Reserve Fund for the following purposes:

    A.  Unbudgeted expenses in contract negotiations and contract litigations.
    B.  Litigations, other than as stated in Section A, above except when the time required to hold a ballot vote will not be detrimental to a litigation, Paragraph 11 will supercede the subsection (10b).

11. Except as stated in paragraphs 9, 10, and 13, a ballot vote with a 2/3 majority vote of approval of the total votes cast by the membership, will be required to withdraw funds from the Reserve Fund.

12. Prior to making changes in the Reserve Fund - Rules and Regulations as per Article 12, Section 1, such changes shall be referred to the Executive Board for study and recommendation.

### ARTICLE XIX (cont)
### RESERVE FUND

13.  Any or all unclassified or unused money of this Association may be deposited in escrow with the Reserve Fund. Money held with the Reserve Fund exceeding the requirements of paragraph 1., may be withdrawn for any purpose in the following manner. The Executive Board may authorize withdrawal of excess monies in the Reserve Fund after first consulting with the Board of Trustees and the Finance Committee, receive a 2/3 vote of approval of the members present at the Executive Board meeting, and receive a 2/3 vote of approval of the votes cast at a regular or special membership meeting.

## ARTICLE XX
### DELETED

# ARTICLE XXI
## P.F.F.A. INSURANCE RULES AND REGULATIONS

### SECTION I
*Known as the Professional Fire Fighters of White Plains, New York, Local 274, Group Life Insurance Plan.*

### SECTION II
The Welfare Chairman elected by the Association bi-annually, shall administer the Group Life Insurance Plan.

### SECTION III
Duties of the Administrator

A.    Keep and maintain all necessary records, reports, beneficiaries, beneficiary changes and other necessary forms required by the insurance carrier and the Association.

B.    Contact each newly appointed member of the department to ascertain whether he desires to join the plan.

C.    Arrange with the Finance Department to begin payroll deductions for each newly enrolled member.

D.    Issue certificates of insurance to new members.

E.    The Secretary-Treasurer and or the Welfare Chairman shall deposit and maintain all funds of the Group Life Insurance Plan in accounts assigned for this purpose. The Secretary-Treasurer and the Welfare Chairman shall maintain the financial records of the Insurance Fund.

F.    Make available to the Association Auditors when called to do so, any necessary records or files required for an annual report.

G.    Arrange for the payment of the premium with the insurance carrier to insure continuation of coverage.

H.    In the event of death of an insured member, complete necessary forms such as beneficiary statement etc., that are required by the insurance carrier to insure a speedy settlement of said claims.

## ARTICLE XXI (cont)
## P.F.F.A. INSURANCE RULES AND REGULATIONS

### SECTION VII

Any dispute arising from the application or interpretation of this life insurance By-Law shall be settled by a determination of the Executive Board.