UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KEVIN HEFFERNAN,

                              Plaintiff,

        -against-                                    07 Civ. 11260 (WCC)


FRANK G. STRAUB, individually and in
his capacity as Commissioner of Public
Safety for the City of White Plains, N.Y.,
RICHARD LYMAN, individually and in his
capacity as Chief of the City of White Plains
Fire Bureau, Department of Public Safety,
RICHARD HOULIHAN, individually and
in his capacity as Deputy Chief, White Plains
Fire Bureau, Department of Public Safety,
VINCENT ROBERTO, individually and in
his capacity as Deputy Fire Chief, White
Plains Fire Bureau, Department of Public
Safety and the CITY OF WHITE PLAINS,
New York,

                              Defendants.
-------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS


                              LOVETT & GOULD, LLP
                              Attorneys for Plaintiff
                              222 Bloomingdale Road
                              White Plains, New York 10605
                              (914) 428-8401

## Table of Contents

                                                                                    **Page**

Table of Authorities ……………....………………………………………iii

Preliminary Statement…………………………………………..……….. 1

Background……………………………………………………………….1

Argument……………………………………………………………… 8

POINT I
       DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST
       AMENDMENT RETALIATION CLAIM SHOULD BE DENIED ……..……8

       A. There can be no dispute that Plaintiff engaged in "core" First
       Amendment protected activities………………………………………9

              1.    Plaintiff's leadership role in the union is protected by the First
              Amendment………………………………………... ……..…… 9

              2.    Plaintiff's expressions of concern about health and safety matters,
              emergency response issues, and budgetary matters are all protected by the
              First Amendment……………………………………………...10

              3.    The radio transmission of April 20, 2005 is also protected
              speech………………………………………………………11

              4.    *Garcetti* does not foreclose Plaintiff's First Amendment
              Claim………………………………………………………12

              5.  Plaintiff's role in the union is not what *Garcetti* was intended
              to cover…………………………………………………...……14

       B. There can be no dispute that Plaintiff suffered adverse
       employment action…………………………………………………16

       C. A causal link has been sufficiently plead………………………………16

POINT II
       DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S EQUAL
       PROTECTION CLAIM MUST BE DENIED……………….………………19

POINT III
      THE INDIVIDUAL DEFENDANTS' MOTION FOR QUALIFIED
      IMMUNITY SHOULD BE DENIED ………………………………………..22

      A.  Plaintiff's First and Fourteenth Amendment rights were clearly
      established………………………………………………………………..22

      B.  Defendants cannot be entitled to qualified immunity since their conduct
      was motivated, at least in part, by Plaintiff's First Amendment protected
      activities………………………………………………………………......23

Conclusion……….……………,,……………………………………………25

## TABLE AUTHORITES

**Cases**                                                                                              **Page**

Clue v. Johnson, 179 F.3d 57 (2nd Cir. 1999) ...............................................11, 23

Cobb v. Pozzi, 363 F.3d 89 (2nd Cir. 2004)......................................................9

DePace v. Flaherty, 183 F.Supp.2d 633 (S.D.N.Y. 2002)....................................20

Diesel v. Town of Lewisboro, 232 F.3d 92 (2nd Cir. 2000)..................................20

Dobosz v. Walsh, 892 F.2d 1135 (2nd Cir. 1989).............................................24

Donovan v. Incorporated Village of Malverne, 2008WL 479994 (E.D.N.Y. 2008).........9

FSK Drug Corp. v Perales, 960 F.2d 6 (2nd Cir. 1992).......................................20

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006)...........................................11, 12, 14

Glass v. Snellbaker, 2007 WL 1723472 (D.N.J. June 14, 2007)............................16

Gonzalez v. Bratton, 147 F.Supp.2d 180 (S.D.N.Y. 2001)..................................19

Hale v. Mann, 219 F.2d 61 (2nd Cir. 2000) ....................................................9

Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 499
    (2d Cir. 2001) ...............................................................................19

Jackson v. Burke, 256 F.3d 93 (2nd Cir. 2001) ..............................................20

Johnson v. Ganim, 342 F.3d 105 (2nd Cir. 2003) ............................................24

Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12 (2d Cir. 1999) ............20, 23

Locurto v. Safir, 264 F.3d 154 (2nd Cir. 2001)..............................................24

Maglietti v. Nicholson, 517 F.Supp.2d 624 (D.Conn.2007)..................................9

McComb v. Reasoner, 29 A.D.3d 795 (2nd Dept. 2006).....................................23

Morris v. Lindau, 196 F.3d 102 (2nd Cir. 1999) ...................................9, 16, 17, 23

Munafo v. Metropolitan Transp. Authority, 285 F.3d 201 (2nd Cir. 2002) ............11, 23

Neilsen v. D'Angelis, 409 F.3d 100 (2nd Cir. 2005)..........................................20

Perez v. Consolidated Edison Corp. of NY, 2006 WL 2707316 (S.D.N.Y. 2006).........19

Piesco v. New York City Department of Personnel, 933 F.2d 1149
      (2d Cir. 1991), *cert. denied* 502 U.S. 921 (1991)............................................22

Rao v. New York City Health and Hosp. Corp., 950 F.Supp. 1236
      (S.D.N.Y. 1995).............................................................................................11

Reyes v. McGinnis, 2003 WL 23101781 (W.D.N.Y. 2003)................................19

Scott v. Goodman, 961 F.Supp. 424 (S.D.N.Y. 1997),
      *aff'd* 191 F.3d 82 (2nd Cir. 1999) .......................................................23

Shirden v. Cordero, 509 F.Supp.2d 461 (D.N.J. 2007).........................................16

Skehan v. Village of Mamaroneck, 2006 WL 2734218 (2nd Cir. 2006).....................16

Village of Willowbrook v. Olech, 528 U.S. 562 (2000).......................................19

Weyant v. Okst, 101 F.3d 845 (2nd Cir. 1996) ...................................................24

Wright v. Village of Franklin Park, 2008 WL 820560 (N.D.Ill. 2008)...................15-16

Zahra v. Town of Southold, 48 F.3d 674 (2nd Cir. 1995).......................................20

## PRELIMINARY STATEMENT

Plaintiff Kevin Heffernan is a Fire Lieutenant employed by Defendant City of White Plains. Plaintiff brought the instant action for violations of his rights to be free from retaliation for engaging in associational and free speech activities as guaranteed by the First Amendment and to be free from selective prosecution and unequal treatment as guaranteed by the Fourteenth Amendment.

Defendants now move pre-discovery for dismissal of the First Amended Complaint. Plaintiff opposes the motion in all respects.

## BACKGROUND

Plaintiff Kevin Heffernan is a Fire Lieutenant employed in the White Plains Fire Bureau, Department of Public Safety, of the City of White Plains. At all times relevant, he has served as a Trustee and as a Vice President of the Professional Fire Fighters Association, Inc. (hereinafter "PFFA" or "union"), Local 274, I.A.F.F., A.F.L.-CIO and as the duly appointed Chairman of the PFFA's Health and Safety Committee (Amd. Complt. ¶3).

Defendant Frank G. Straub is the Commissioner of Public Safety for the City of White Plains, New York. Defendant Richard Lyman is the Fire Chief. Defendants Richard Houlihan and Vincent Roberto are the Deputy Fire Chiefs (Amd. Complt. ¶¶4-7).

In 2003 and 2004, Plaintiff engaged in various union related activities in his capacity as a member of the PFFA's administration – including in his capacities as a trustee, Vice President, and Chairman of the Health and Safety Committee (Amd. Complt. ¶9).

Defendants wholly omit from their motion papers any reference to these allegations and completely skip over paragraph 9 which alleges a host of First Amendment protected activities (*see* Defendants' Memorandum of Law, pp. 4, 9). Defendants have instead chosen to rewrite the

Amended Complaint and limit this case incorrectly to one discrete aspect of the pleading, namely the April 20, 2005 radio transmission. However, even then, they fail to include a full recitation of the relevant facts.

Despite Defendants' ignorance of these assertions of fact, the Court must consider all of the allegations plead in the Complaint.

To that end, the Court should consider the fact that Plaintiff participated on behalf of the PFFA in meetings with the City's Fire Bureau administration, including some if not all of the Defendants, at which he raised safety concerns, expressed opinions about the level of manpower needed to effectively and safely participate in Rescue and Haz Mat missions, and questioned the sufficiency of the City's proposal for a Rescue and Haz Mat Unit (Amd. Complt. ¶9a).

He also participated on behalf of the PFFA in meetings with Defendant Straub, Lyman, and other City officials at which Plaintiff expressed concerns about the City's failure to implement a decision and order rendered by the New York Supreme Court, County of Westchester, with respect to the City inappropriately utilizing members of the Fire Bureau in an out of title "Lieutenant" capacity in violation of New York State Civil Service laws (Amd. Complt. ¶9b).

In addition, Plaintiff attended the City's budget and finance committee meetings on behalf of the PFFA, at which Straub and other City officials were present as a result of which the PFFA Executive Board determined to pursue matters with the City Council involving safety concerns that existed with respect to both Fire Bureau personnel and citizens of the City of White Plains resulting from a lack of manpower, updated and/or sufficient equipment, concerns about the ability to respond to fires in the City's growing population of high rise structures, and the

2

need for rehabilitation of firefighters after strenuous training in order to prevent injury to firefighters and citizens (Amd. Complt. ¶9c).

Moreover, Plaintiff repeatedly expressed concerns to City council members on behalf of the PFFA, who in turn advised Defendants of these concerns, with respect to health and safety matters, including the need for sufficient backup of members engaged in emergency responses in order to prevent injury, the need for a plan in responding to the dangers associated specifically with high rise buildings, the need for fire fighting equipment necessary to effectively carry out firefighting duties, and the fact that the City was exposing itself to potential litigation by failing to comply with national minimum standards in fire safety (Amd. Complt. ¶9d).

He also raised concerns that the City failed to hire additional fire personnel sufficient to safely combat life threatening fires in the City while at the same time expending resources in hiring additional police personnel (Amd. Complt. ¶9e).

Furthermore, during the time he was campaigning for the position of PFFA Vice President Plaintiff expressed disagreement with the manner in which Defendants were operating the Fire Bureau relating to the health and safety of both City employees and citizens (Amd. Complt. ¶9f).

On April 20, 2005, at the direction of Roberto "live fire" training was conducted requiring the presence at the Department's drill school of four out of the nine City fire trucks - - a circumstance which, by reason of Roberto's stunning stupidity, left available for the entire City's fire protection only one rescue vehicle, three fire engines and one truck. At no time was Roberto subjected to disciplinary action by Straub, despite his (Roberto's) having unilaterally, literally put the health and safety of the entire City of White Plains at risk (Amd. Complt. ¶10).

The training exercise was conducted on an inordinately hot April day during which members present were dressed in full gear, engaged in actual firefighting duties during drills extinguishing live burns in a concrete and metal structure, used up in whole or substantial respect their available "scott pak" breathing equipment and water supply, and were rendered tired, thirsty, and overheated (Amd. Complt. ¶11).

Near the conclusion of the second evolution, a fire broke out at the rear of a residence situated at 10 Rose Street in the City as a result of which Roberto directed that the equipment and men training at the drill site "go available", that is ready their vehicles so as to be available to "cover" the City in the event of another emergency call (Amd. Complt. ¶12).

Defendants ignore the fact that Plaintiff and the members assigned to his crew complied with Roberto's directive, as did others at the drill school. At that time it was determined by the Lieutenant in charge of fire training that all members would first assist two of the four crews in readying their fire vehicles (Amd. Complt. ¶13).

Defendants further omit from their papers any reference to the fact that while complying with Roberto's directives, Plaintiff was approached specifically in his capacity as Chairman of the Health and Safety Committee by another member present at the live fire training drill site who was concerned about the lack of rehabilitation of those members who had engaged in the live fire training that day (Amd. Complt. ¶14).

Thus, in his capacity as Chairman and justifiably concerned about the health and safety of the fire fighters who had been engaged in the live fire training and were physically exhausted, lacked any time for rehabilitation and refreshment of supplies, and out of concern for the safety of citizens whom these firefighters may be called upon to assist and/or rescue, Plaintiff cautioned

4

Defendants by radio transmission that the command needed to be aware those fire fighters who were at the drill site that day were "fatigued" (Amd. Complt. ¶15).

Plaintiff's expressions of concern were then the subject of discussions amongst, *inter alia*, Defendants Lyman and Roberto (Amd. Complt. ¶16).

As a proximate result, motivated by a intent to retaliate against Plaintiff by reason of his aforementioned union activities, his expressive association and his expressions of concern on April 20, 2005 and by an intent to silence and/or significantly curb Plaintiff's exercise of these rights, Straub, Lyman, Houlihan and Roberto entered into an agreement on April 20, 2005, to institute and prosecute disciplinary proceedings intended to terminate Plaintiff's employment. In that connection and with a view towards giving the false impression that the disciplinary action was being pursued because of a supposedly slow response time demonstrated by the fire fighters' reaction to Roberto's directive referenced *supra*, two Fire Lieutenants were brought up on disciplinary charges: Plaintiff and Lawrence Toglia (hereinafter "Toglia") (Amd. Complt. ¶17).

In contrast to Plaintiff, Toglia was not an official of the PFFA and had no PFFA responsibilities for matters relating to health and safety of PFFA members (Amd. Complt. ¶18).[1]

In furtherance of Defendants' plan to retaliate against Plaintiff, and to use Toglia to create the above referenced false impression, Lyman preferred against Toglia disciplinary charges accusing him, in substance, of failing to timely respond to Roberto's order to "go available." Roberto then told Toglia that he [Toglia] was simply "in the wrong place at the wrong time" and at the same time questioned Toglia about his communications specifically with Plaintiff on the date of the fire training (April 20, 2005) (Amd. Complt. ¶19(a)).

Also, Lyman on or about July 29, 2005, preferred against Plaintiff the exact same disciplinary charges as preferred against Toglia but additionally accused Plaintiff in a sixth

[1] Defendants also ignore the allegations in ¶18 and ¶19 referring to Defendants' retaliatory motives and intent.

5

charge of violating Section 128 of the Department of Public Safety's rules (prohibiting members from engaging in conduct "which may bring reproach or reflect discredit upon the Department") (Amd. Complt. ¶19b).

The additional disciplinary charge, labeled as the Charge VI, specifically targeted his expressions on matters of safety and health, and unlike the charges against Toglia, alleged: ". . .that on or about April 20, 2005[,] at approximately 1:47 p.m., you made an inappropriate radio transmission advising Ross Street command that drill school companies are fatigued during a working fire" (Amd. Complt. ¶20).

Because Charge VI targeted Plaintiff for speaking out on a matter of public concern in his Vice President and Chairman capacities, on November 15, 2005, the PFFA filed an Improper Practice Charge (#U26382, hereinafter "IP") with the New York State Public Employment Relations Board (hereinafter "PERB"). By "Notice" dated November 30, 2005, and received by the City's Department of Law on December 2, 2005, PERB directed that the City and PFFA attend a conference on January 12, 2006, with respect to the IP (Amd. Complt. ¶21).

During the pendency of the disciplinary charges but before the hearing, Plaintiff, in his capacity as a PFFA Executive Board member, interviewed candidates for the upcoming November 2005 election. During those interviews, Plaintiff specifically focused on health and safety concerns which the PFFA and its members had, including but not limited to manpower, equipment, and response to emergency situations (Amd. Complt. ¶22).

Under the circumstances and by prior agreement of the Defendants, Toglia's disciplinary charges were amicably resolved as a result of which Toglia forfeited one to three days of accrued time (Amd. Complt. ¶23).

6

Plaintiff's disciplinary charges were not disposed of by agreement. A formal disciplinary hearing commenced on December 13, 2005 (Amd. Complt. ¶24). In that connection Defendants, motivated by their intent to retaliate against Plaintiff, acting by the City's Law Department advised the Hearing Officer in an opening statement and a post-hearing brief that Plaintiff's supposed misconduct was so "egregious" as to warrant his "dismissal" from the City's employ (Amd. Complt. ¶25).[2]

Immediately following these opening remarks, Defendants' legal representative withdrew, on behalf of "Commissioner Straub", Charge VI - - manifestly because Defendants appreciated by reason of the IP that Plaintiff's expression of concern regarding matters of health and safety, as articulated by him in his Vice President/Chairman of the Health and Safety Committee capacities, comprised First Amendment protected speech expressed by Plaintiff during the exercise of his associational rights (Amd. Complt. ¶26).

Defendants completely ignore in this motion that at the disciplinary hearing, testimony was adduced demonstrating the bogus nature of the disciplinary charges against Plaintiff. For after the Rose Street call came in everyone at the drill school, including Plaintiff, worked diligently to extinguish the then burning fire, collect equipment from in and around the burning building, dismantle a five inch supply hose which was preventing trucks from exiting the drill school, assist two crews in readying their trucks for immediate response after which time Plaintiff and his crew gathered their equipment and readied their vehicle (Amd. Complt. ¶27).

Despite that evidence, on March 18, 2007, the Hearing Officer, Robert Ponzini, Esq. - - who had been intentionally selected because of his well-established (and justified) reputation for always ruling against employees in Section 75 disciplinary proceedings and always ruling in favor of the municipal corporation because it pays his fees - - issued a report and

---

[2] Defendants again ignore these key facts.

recommendation substantially ignoring the evidence, finding Plaintiff "guilty" and recommending imposition of a thirty day payless suspension (Amd. Complt. ¶28).

On April 24, 2007, Straub adopted Ponzini's recommendations and issued a final administrative determination imposing upon Plaintiff a thirty day payless suspension "commencing April 26, 2007 through and including May 25, 2007" (Amd. Complt. ¶29).

Finally, Defendants completely ignore any allegations in the First Amended Complaint which relate to Plaintiff's Fourteenth Amendment Equal Protection claim. Thus, although they mention Toglia in their papers and the fact that he only received a loss of one to three days accrued time, they fail to include any reference to the other similarly situated members of the Fire Bureau who were not similarly charged, prosecuted or disciplined when their response time from a training event to an active fire took over 25 minutes in 2003 (Amd. Complt. ¶30).

## ARGUMENT

### POINT I

### DEFENDANT'S MOTIONT TO DISMISS PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM SHOULD BE DENIED

Defendants move to dismiss Plaintiff's First Amended Complaint but in doing so ignore the majority of the facts plead therein. For unexplained reasons, they falsely claim that Plaintiff only identifies the radio transmission of April 20, 2005 as the protected speech/conduct and incorrectly state that "Plaintiff does not allege any other First Amendment violation as the basis of the §1983 claims." (Defendants' Memorandum of Law, p. 9).[3]

---

[3] Nowhere in the pleading does Plaintiff limit his claim to the April 20, 2005 radio transmission. Even the allegations in paragraph 17 prove false Defendants' self-serving limitation of Plaintiff's claims: "motivated by an intent to retaliate against plaintiff by reason of his aforementioned union activities, his expressive association, **and** his expressions of concern on April 20, 2005..." (Amd. Compt. ¶17) (emphasis added).

The Court should deny the motion to dismiss for when the Court considers all of the facts contained in the First Amended Complaint it becomes evident that Plaintiff has sufficiently plead a violation of his First Amendment rights of free speech and to associate with the union.

To establish a First Amendment retaliation claim, Plaintiff must show that: (1) he engaged First Amendment protected activity; (2) he suffered adverse employment action; and (3) the protected activity was "a substantial or motivating factor" in the adverse employment action. Hale v. Mann, 219 F.2d 61 (2nd Cir. 2000); Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999).

**A. There can be no dispute that Plaintiff engaged in "core" First Amendment protected activities**

Although Defendants ignore the bulk of Plaintiff's allegations concerning his exercise of his rights of free speech and association, it cannot seriously be disputed that Plaintiff meets the first element of his claim.

**1. Plaintiff's leadership role in the union is protected by the First Amendment**

For here, Plaintiff not only associated with the union but he served in several leadership roles, including as Trustee, Vice President, and as Chair of the Health and Safety Committee (Amd. Complt. ¶3). Plaintiff's leadership positions with the PFFA and even his membership in the union "in and of itself is enough to satisfy the public concern element". Donovan v. Incorporated Village of Malverne, 2008 WL 479994, *6 (E.D.N.Y. 2008), citing Scott v. Goodman, 961 F.Supp. 424, 435 (E.D.N.Y. 1997), aff'd 191 F.3d 82 (2nd Cir. 1999) and Maglietti v. Nicholson, 517 F.Supp.2d 624, 635 (D.Conn.2007).

Further, it is well established that "retaliation solely for union activity clearly raises a public concern under Connick." Id. (also holding that activities on behalf of a union group that include criticisms of management touch on matters of public concern under Connick); see also Cobb v. Pozzi, 363 F.3d 89, 107 (2nd Cir. 2004) (assuming membership in a union is sufficient in

9

and of itself to satisfy the public concern requirement and reiterating the prior holding of <u>Clue</u>

that "union **activities** such as handing out leaflets and distributing a union newsletter satisfied

*Connick's* public concern requirement").

### 2. Plaintiff's expressions of concern about health and safety matters, emergency response issues, and budgetary matters are all protected by the First Amendment

In addition to these protected associational activities, Plaintiff expressed his opinions on

matters of manifest public concern to Defendants, City officials, council members and other

employees of the City of White Plains.

More specifically, Plaintiff attended meetings on behalf of and at which he represented

his union, the PFFA.   These meetings were held with Defendants, City officials, City council

members, budget and finance officials, and other City employees.  The subjects about which

Plaintiff repeatedly expressed his opinions all related to the utmost matter of public concern –

namely the safety and welfare of City employees and citizens as it related to emergency

responses in the City.

More specifically, Plaintiff expressed his opinions about:  manpower and staffing issues,

including sufficiency or lack thereof of staffing, backup, assignment of manpower and need for

rehabilitation after staff are involved in emergency responses and training; the shortcomings of

the City's Rescue and Haz Mat plan; issues involving the newly emerging high rise structures in

the City and affect of those structures on the manner in which fires are fought; the need for

necessary safety equipment; violation by the City of a Court order which prohibited employees

from being assigned to a supervisory Lieutenant position in an out of title capacity; budgetary

issues as it related to manpower, equipment, rehabilitation and high rise structures; and the

potential liability the City faced for not meeting national minimum firefighting standards (Amd.

Complt. ¶9a-e).

Also, while campaigning for the position of Vice President of the PFFA, Plaintiff expressed his disagreement with the manner in which the Fire Bureau was being operated impairing the health and safety of employees and citizens (Amd. Complt. ¶9f).

Clearly, Plaintiff's expressions of opinion are also protected by the First Amendment as they touch on matters of manifest public concern. *See* Munafo v. Metropolitan Transp. Auth., 285 F.3d 201, 212 (2nd Cir. 2002) (safety concerns in the workplace are matters of public concern); Rao v. New York City Health and Hosp. Corp., 950 F.Supp. 1236, 1243 (S.D.N.Y. 1995) (employee bringing to light actual or potential wrongdoing or a breach of public trust, including illegal and wasteful practices, "obviously involves a matter of public concern), *citing* Connick, 461 U.S. at 148 and Rookard, 710 F.2d at 46; Clue v. Johnson, 179 F.3d 57, 61 (2nd Cir. 1999) (criticisms of labor policies of the employer and criticisms of management raise matters of public concern); Garcetti v. Ceballos, 126 S.Ct. 1951, 1959 (2006)(the fact that plaintiff expressed his views internally rather than publicly does not alter the analysis as many employees talk inside the workplace).

### 3. The radio transmission of April 20, 2005 is also protected speech

In addition to these protected activities, Plaintiff's statement on April 20, 2005 that the members of the Department at the drill site were fatigued is also protected.

This statement clearly touches upon a matter of public concern – namely the safety of the staff who were being sent to an emergency, active fire scene, the safety of their fellow firefighters at that scene, and the citizens who these individuals are responsible for assisting. *See* Munafo, 285 F.3d at 212 (safety concerns in the workplace are matters of public concern). Even Defendants cannot claim that Plaintiff's opinion is not a matter of public concern.

11

### 4. *Garcetti* does not foreclose Plaintiff's First Amendment claim

Defendants only argument to dismiss Plaintiff's entire First Amendment claim is that the holding of Garcetti v. Ceballos precludes the instant claim because Plaintiff's statements over the radio on April 20, 2005 were made pursuant to Plaintiff's official duties (Defendants' Memorandum of Law, pp. 9-12).

Even in making this argument, Defendants ignore key facts plead in the First Amended Complaint, including: (1) that Plaintiff was initially approached by another employee on April 20, 2005, in his capacity as Union Vice President/Chair, who was concerned about the lack of any rehabilitation afforded to the members at the drill site that day; (2) Plaintiff then made the radio communication in his capacity as Chair of the Health and Safety Committee; and (3) Plaintiff was then served with disciplinary charges alleging that his radio transmission was "inappropriate" (Amd. Complt.¶¶14, 15 and 20).

These facts show that Plaintiff was not speaking out pursuant to his official duties as a Lieutenant but rather in his capacity as Union Chair. This of course distinguishes Plaintiff's case from all those cited by Defendants where the plaintiff was speaking pursuant to directions by superiors or pursuant to their official duties (Defendants' Memorandum of Law, pp. 10-11).

More importantly, Defendants' current argument that Plaintiff's speech was required to be made by him pursuant to his official duties is completely inconsistent with the disciplinary charges which alleged that Plaintiff's April 20, 2005 statement was inappropriate. The statement cannot be both "inappropriate" and "pursuant to official duties." For if the statement was required by reason of Plaintiff's job duties and responsibilities, it cannot be inappropriate and grounds for misconduct.[4]

---

[4] It is not as if Plaintiff used profanity or other inappropriate language over the radio.

Going one step further, even the job description (a matter outside the pleadings), upon which Defendants now rely, undercuts the notion that Plaintiff was speaking pursuant to his duties as a Fire Lieutenant when he transmitted his opinion over the radio that the firefighters from the drill school were fatigued.

That portion of the job description cited by Defendants states: "Examples of Work: Operates portable radio and/or other radio equipment **at fire or rescue scenes**, and makes reports to Dispatcher of condition and unit status." (Defendants Ex. D) (emphasis added).

A plain read of the job description shows that it refers to Plaintiff's obligation to make radio transmissions **at a fire or rescue scene**. It cannot be disputed that Plaintiff was not at a fire scene when he made these statements over the radio on April 20, 2005. In fact, he and his unit were not even on active status at the time of the transmission.

In addition, the job description clearly refers to Plaintiff's obligation as a Lieutenant to report to the dispatcher the condition of those assigned to his unit. When Plaintiff made the radio transmission on April 20, 2005 he was clearly referring to employees that were not assigned to his unit, over which he had no supervisory responsibility, and who were not even at the drill site at the time he expressed his opinion. Put differently, his statement was not a report to the dispatcher about his crew's status, or about those then at the site he was at, and thus does not even fall within the job description relied upon by Defendants.

Similarly, the Rules and Regulations for the Government of Officers relied upon by Defendants also demonstrate that Plaintiff's speech over the radio was not pursuant to his official duties. As cited by Defendants, those rules provide that the member must notify the dispatcher of an "inability to report for duty." (Defendants' Memorandum of Law, p. 5, citing Ex. E

13

§129(3)). However, Plaintiff at no time indicated that he or anyone else was unable to report for duty and that section is therefore inapposite.

Thus, the fact that Plaintiff's expressions of concern were not about the men assigned to his crew, did not fall within the job description and were made in his capacity as a union leader, clearly distinguish Plaintiff from Garcetti. For Garcetti **admitted** that his expressions of concern were contained in a memorandum he prepared "pursuant to his duties as a prosecutor." Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006).[5]

Thus, any argument that Plaintiff's speech was not protected must be rejected.

## 5. Plaintiff's role in the union is not what *Garcetti* was intended to cover

Defendants then speciously argue that because Plaintiff's positions with the union were garnered because he is a public employee then any statements made by Plaintiff in those union capacities are unprotected by the First Amendment (Defendants' Memorandum of Law, pp. 12-13). Defendants cite to no case law in support of this completely ridiculous argument.

In fact, Garcetti itself restricted its holding to public employees who make statements "pursuant to their official duties". Garcetti, 126 S.Ct. at 1960.

Here, Plaintiff's official duties were as a Lieutenant in the Fire Bureau and not in the positions he held with the union. And Plaintiff's expressions of concern were not made pursuant to his duties as a Fire Lieutenant but rather in his capacity as a union Trustee, Chair and Vice President (Amd. Complt. ¶¶9 and 15).

In addition to the allegations in the Complaint, several facts cannot be disputed showing Plaintiff's speech in his union positions was not made pursuant to his "official duties."

---

[5] One further point is warranted. Just because here Plaintiff was aware that firefighters were fatigued because it happened while he was working does not render his expressions of concern unprotected. A similar argument was specifically rejected in Garcetti: "The memo [written by Ceballos] concerned the subject matter of Ceballos' employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job." Garcetti, 126 S.Ct. at 1959, *citing* Pickering, 291 U.S. at 573 and Givhan, *supra* at 414.

This is proven by the fact that Plaintiff is paid a salary and receives benefits from the City to perform duties as a Lieutenant. He is not paid by anyone, much less the City, to serve in any leadership role in the union.

In addition, Defendants have authority and discretion over Plaintiff's assignments, daily job duties and responsibilities, hours of work, and other terms of employment in his position as Lieutenant. They in no way have any authority or discretion with respect to who the union chooses to be its leaders much less the manner in which those leaders serve the union membership.

Going one step further, Defendants do not argue and the job description they rely upon does not indicate that Plaintiff's official duties in any way required him to: make reports on the health status of firefighters over whom he exercised no supervisory authority; express opinions to City officials about the need for manpower, rehabilitation, equipment, and other items directly affecting all employee/citizen safety; express opinions to City officials about the need for plans to cover the high rise structures emerging in the City of White Plains; express his opinions on behalf of the union about budgetary matters; express opinions about potential liability the City faced for failing to meet national minimum standards; expressing concern over the failure of the City to comply with a Court order regarding unlawfully using employees in an out of title supervisory capacity; and expressing views disagreeing with the manner in which the Fire Bureau was operated (*see* Amd. Complt. ¶¶9a-f).

Similarly, no part of Plaintiff's official duties requires him to become a union leader or speak out on behalf of others about matters affecting their health and safety.

As a matter of law, Defendants' argument that <u>Garcetti</u> should apply to Plaintiff's position in the union has been repeatedly rejected by many other courts. *See* <u>Wright v. Village of</u>

Franklin Park, 2008 WL 820560, *20 (N.D.Ill., 2008) (union "association is not among his [plaintiff's] job duties"), *citing* Smith v. Ark. St. Hwy. Employees, Local 1315, 441 U.S. 463, 465 (1979) (stating that public employees have a First Amendment right to be free from retaliation on the basis of association) and Glass v. Snellbaker, 2007 WL 1723472 at *4 (D.N.J. June 14, 2007)(holding that union association does not fall within the *Garcetti* retaliation exclusion); *see also* Shirden v. Cordero, 509 F.Supp.2d 461, 466-467 (D.N.J. 2007) (*Garcetti* does not control statements made in capacity as Union President), *citing* Fuerst v. Clarke, 454 F.3d 770, 774 (7th Cir. 2006) ("noting that because Plaintiff's comments 'were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff,' *Garcetti* is inapposite.").

## B. There can be no dispute that Plaintiff suffered adverse employment action

There is no dispute here that Plaintiff suffered adverse employment action in that he was served with disciplinary charges, was suspended, and suffered a loss of thirty days' pay. *See* Skehan v. Village of Mamaroneck, 2006 WL 2734218, *7 (2nd Cir. 2006) ("the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision"), *citing* Burkybile v. Bd. of Educ., 411 F.3d 306, 313-314 (2nd Cir. 2005); Morris, 196 F.3d at 110.

## C. A causal link has been sufficiently plead

With respect to causation, a review of the entire pleading reveals sufficient allegations to support a conclusion at this 12(b)(6) stage that Plaintiff's First Amendment protected activities were a substantial or motivating factor in the adverse employment action taken by Defendants. Of course, causation can be alleged "indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in

employment, [and] directly by evidence of retaliatory animus." Morris, 196 F.3d at 110, *citing* Sumner v. US Postal Service, 899 F.3d 203, 209 (2nd Cir. 1990).

Here, the disciplinary charges were preferred very close in time after Plaintiff's speech and associational activities in 2004 and also to the April 20, 2005 radio transmission. That timing is sufficient, certainly at this pre-discovery stage, to warrant denial of Defendants' motion. Id.

Defendants claim that because they withdrew the charge against Plaintiff relating to his "speech" on April 20, 2005, that there is no causal connection between Plaintiff's speech and the charges. The argument is nonsensical. It is also disputed by other facts asserted in the First Amended Complaint which sufficiently show the requisite causal link.

First, again ignored by Defendants, Plaintiff specifically asserts that he was outspoken on matters of public concern as a union leader (safety, budgetary, liability issues, etc.) and as a result of those First Amendment protected activities he was the subject of adverse action. There is no dispute that regardless of the fact that Defendant withdrew one of the charges, Plaintiff was still hit with additional charges and ultimately a thirty day suspension without pay (Amd. Complt. ¶¶17, 19, 20, 29).

Second, Plaintiff alleges that Toglia's charges and the outcome of those charges support the requisite causal link between Plaintiff's protected activities and the adverse action – or at least enough to create a question of fact that must be resolved by a jury – for several reasons.

For Toglia, who was in an identical circumstance to Plaintiff at the drill school that day but who was not active in the union, was treated differently in that he only received a loss of accrued time amounting to somewhere between one and three days (Amd. Complt. ¶¶18 and 22).

In comparison, Plaintiff was not only not offered a similar deal but at the hearing

Defendants sought his termination from the City's employ – a circumstance that proves their ultimate goal of silencing Plaintiff by getting rid of him (Amd. Complt. ¶25).

In addition, a comparison of the charges against Plaintiff and Toglia shows that Plaintiff was targeted for his radio transmission on April 20, 2005 as that was a specific charge against him (Amd. Complt. ¶20) – a transmission Defendants now inconsistently claim was required by Plaintiff's job duties and responsibilities thereby showing the baseless nature of the disciplinary action against Plaintiff.

Also, although Defendants withdrew the charge against Plaintiff relating to his making of the April 20, 2005 radio transmission, they did so only after an improper practice charge was filed with PERB (Amd. Complt. ¶21).

Furthermore, the fact that the charge was withdrawn does not alter the Defendants' intent and motives in bringing all charges in the first instance. Put differently, they cannot undo improper motive by simply withdrawing a charge after the fact.

In fact, Roberto's statement to Toglia that he was being charged because he was "in the wrong place at the wrong time" while questioning Toglia about Plaintiff supports the factual argument that the charges against Plaintiff were motivated, at least in part, by Defendants' retaliatory intent (Amd. Complt. ¶19(a)).

Perhaps most importantly, as plead in the First Amended Complaint, at the hearing evidence was adduced demonstrating the baseless nature of the disciplinary charges against Plaintiff -- namely that after the Rose Street call came in everyone at the drill school, including Plaintiff, worked diligently to extinguish the then burning fire, collect equipment from in and around the burning building, dismantle a five inch supply hose which was preventing trucks from exiting the drill school, assist two crews in readying their trucks for immediate response after

18

which time Plaintiff and his crew gathered their equipment and readied their vehicle (Amd. Complt. ¶27).

Finally, Plaintiff alleges that other individuals who were significantly delayed from training to an emergency call under the same administration in 2003 were not similarly charged or punished (Amd. Complt. ¶30).

Clearly, Defendant's motion on the issue of causation must fail because it completely ignores the "well established principle that questions of causation are generally questions of fact to be submitted to the jury." *See* Reyes v. McGinnis, 2003 WL 23101781, *6 (W.D.N.Y. 2003), *citing* Petrozza v. Inc. Village of Freeport, 602 F.Supp. 137, 144 (E.D.N.Y. 1984); Gonzalez v. Bratton, 147 F.Supp.2d 180, 198 (S.D.N.Y. 2001); Perez v. Consolidated Edison Corp. of NY, 2006 WL 2707316, *13 (S.D.N.Y. 2006), *citing* Cioffi, 444 F.3d at 168.

## POINT II

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S EQUAL PROTECTION CLAIM MUST BE DENIED

Here again, Defendants ignore the allegations in the First Amended Complaint with respect to their arguments for dismissal of Plaintiff's Fourteenth Amendment claim for Plaintiff has alleged that he was treated differently from other similarly situated individuals.

With respect to his Fourteenth Amendment claim, Plaintiff must allege that: (1) he was selectively treated in comparison with someone who was similarly situated; and (2) the selective treatment was prompted by impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person; **or** that Defendants' conduct was irrational and arbitrary. Harlen Associates v. Incorporated Village of Mineola, 273 F.3d at 499-500 (2nd Cir. 2001) (conduct is irrational where no legitimate reason exists for government's actions); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000);

19

Jackson v. Burke, 256 F.3d 93, 97 (2nd Cir. 2001); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2nd Cir. 2000); Lisa's Party City, Inc., v. Town of Henrietta, 185 F.3d 12 (2d Cir. 1999); Neilsen v. D'Angelis, 409 F.3d 100 (2nd Cir. 2005).

Plaintiff's First Amended Complaint clearly meets both prongs of this claim.

With respect to the first prong of this claim, Plaintiff alleges that he was treated differently from other sworn members of the Fire Bureau, including: (1) Lt. Toglia; and (2) those members of the Bureau who were delayed in responding to the emergency call in 2003 (Amd. Complt. ¶¶18, 19, 23, and 30).[6]

These individuals are clearly similarly situated to Plaintiff in that they are all subjected to the same rules and regulations as Plaintiff. At a minimum, the question of whether Plaintiff and these other employees were "similarly situated" is a question of fact for the jury after discovery. See DePace v. Flaherty, 183 F.Supp.2d 633, 639 (S.D.N.Y. 2002) ("whether two people are similarly situated ordinarily is a question of fact for the jury."), citing see, e.g., Crowley v. Courville, 76 F.3d 47, 52-53 (citations omitted); Zahra v. Town of Southold, 48 F.3d 674, 683 (2nd Cir. 1995); FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2nd Cir. 1992).

Even Defendants concede that Plaintiff and Toglia were both Lieutenants charged with "identical disciplinary charges" (with of the course the one exception targeting Plaintiff for his free speech activities) (Defendants' Memorandum of Law, p. 15). In addition, the other firefighters in 2003 are all similarly situated in that they are subject to the same rules and regulations and these allegations of delayed response to an emergency call which occurred under the tenure of the Defendants are very similar. As such, Plaintiff is, as a matter of law, similarly situated to numerous individuals.

---

[6] Plaintiff has served discovery requests seeking the identity of the individuals who were involved in this incident and documents pertaining to the timing of the response. Defendants' responses, by agreement, are due on or before June 5, 2008.

The fact that Toglia was treated differently in settling the charges does not render him "dissimilar" to Plaintiff – as Defendants now suggest.  Similarly, Defendants argument as to who could be similarly situated simply misstates the law pertaining to the "similarly situated" test (see Defendants' Memorandum of Law, p. 16).  And Defendants' arguments in this regard, prior to any discovery, are simply inserting more questions of fact for discovery and trial.

The allegations further show that Plaintiff was treated differently from these similarly situated individuals in that he was subjected to formal disciplinary charges, they sought his termination, and he was hit with a thirty day loss of pay while: (1) Toglia only received a one to three day loss of accrued time (Amd. Complt. ¶23); and (2) those involved in the 2003 incident were not disciplined in any way (Amd. Complt. ¶27).

With respect to the second prong of Plaintiff's Fourteenth Amendment claim, as fully analyzed *supra* in Point I, the First Amended Complaint sufficiently alleges that the disciplinary charges were preferred against Plaintiff and Plaintiff suffered a thirty day loss of pay as a result of Defendants' motive to retaliate against him for the exercise of rights as guaranteed by the First Amendment.   Put differently, the same facts that state Defendants' unlawful motives in taking these actions against Plaintiff similarly establishes the second prong here that Defendants' were motivated by an intent to prohibit or punish the exercise of constitutional rights. *See* Point I, *supra.*

Further, Plaintiff can also satisfy the second element of his selective prosecution claim because a jury could reasonably conclude that Defendants' did not have a rational basis for preferring charges against Plaintiff and suspending him for thirty days without pay.

For as alleged in the Complaint there was no rational basis for bringing the charges against Plaintiff to begin with since at the disciplinary hearing, testimony was adduced

21

demonstrating the bogus nature of the disciplinary charges against Plaintiff, namely that after the Rose Street call came in everyone at the drill school, including Plaintiff, worked diligently to "go available."(Amd. Complt. ¶27).

In addition, Roberto's statement to Toglia that he was being charged because he was "in the wrong place at the wrong time" while questioning Toglia about Plaintiff supports the factual argument that the charges against Plaintiff lacked a rational basis and were instead retaliatory in nature (Amd. Complt. ¶19(a)).

As the allegations in the Amended Complaint sufficiently state an Equal Protection violation, Defendants' motion to dismiss should be denied.

**POINT III**

**THE INDIVIDUAL DEFENDANTS' MOTION FOR
QUALIFIED IMMUNITY SHOULD BE DENIED**

When the Court considers the facts asserted in the complaint, accepting them as true as it must do at this stage of the litigation, the defense of qualified immunity must fail for it can never be objectively reasonable for any government official to act with unlawful, retaliatory intent.

Qualified immunity shields government officials from liability for civil damages when the performance of their discretionary functions "'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Piesco v. City of New York, Dep't of Personnel, 933 F.2d 1149, 1160 (2d Cir. 1991), cert. denied 112 S.Ct. 331 (1991). An official does not have immunity, however, where the contours of the right were sufficiently clear that a reasonable person would understand that what he is doing violates that right." Id.

**A. Plaintiff's First and Fourteenth Amendment rights were clearly established**

This is not a case where the law in question was insufficiently clear. In asserting qualified immunity, Defendants simply argue that their conduct in preferring charges, prosecuting Plaintiff

22

and "imposing a hearing officer's penalty" does not violate any clearly established rights (Defendants' Memorandum of Law, pp. 17-18).

Contrary to this claim, the law is clearly established. *See* Morris, 196 F.3d at 110 (speech on 'any matter of political, social or other concern to the community' is protected by the First Amendment."), *quoting* Connick, 461 U.S. at 146; Munafo, 285 F.3d at 211 (right to be free from retaliation for speech on matter of public concern); Lisa's Party City, Inc., 185 F.3d 12 (right to be free from selective prosecution); Clue, 179 F.3d at 61 (employee's right to be free from retaliation for their union activities and "retaliation solely for union activity clearly raises a public concern under Connick."); Scott v. Goodman, 961 F.Supp. 424, 435 (E.D.N.Y. 1997), *aff'd* 191 F.3d 82 (2nd Cir. 1999) (same).

Furthermore, Defendants set the chain of events in motion when they preferred charges against Plaintiff for retaliatory reasons. They then prosecuted Plaintiff, seeking his termination. Finally, they (and not the hearing officer) decided to impose a thirty day payless suspension. They were not simply "imposing a hearing officer's penalty" as they now state in a clear attempt to mislead the Court.[7]

## B. Defendants cannot be entitled to qualified immunity since their conduct was motivated, at least in part, by Plaintiff's First Amendment protected activities

As plead, the individual defendants' retaliatory actions were motivated, at least in part, by their intent to retaliate against Plaintiff for his protected activities and similarly situated individuals who were not outspoken and active in the union were treated differently (Amd.

---

[7] Along similar lines, Defendants' assertion that Plaintiff is using this forum to challenge the findings and conclusions of the hearing officer is completely off base. Defendants were the ones who determined to bring the charges in the first instance and also the ones who had the ultimate, discretionary decision making authority with respect to penalty. The hearing officer was without power to impose any penalty against Plaintiff. *See* McComb v. Reasoner, 29 A.D.3d 795, 799 (2nd Dept. 2006), *citing* Civil Service Law §75(2), Matter of Martin v. Platt, 191 A.D.2d 758, 759 and Matter of Sassone v. New York State Thruway Auth., 171 A.D.2d 308, 310.

Complt. ¶¶17-20, 23, 30).   Without the benefit of any discovery, these allegations must be deemed true for purposes of the instant motion.

Clearly, if a jury were to find the allegations in the First Amended Complaint to be supported by credible evidence, namely that Defendants acted with impermissible motives, qualified immunity would never be available since **"it can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law."** Locurto v. Safir, 264 F.3d 154, 169 (2nd Cir. 2001).

And since the issue of Defendants' motives and intent is a disputed issue of fact, the Court cannot grant qualified immunity as a matter of law.

> "Though the qualified immunity inquiry is generally an objective one, a defendant's subjective intent is indeed relevant in motive-based constitutional torts such as the one alleged by [Plaintiff]. Otherwise, defendants in such cases would always be immunized from liability 'so long as they could point to objective evidence showing that a reasonable official could have acted on legitimate grounds.' Locurto, 264 F.3d at 169 (quoting Hoard v. Sizemore, 198 F.3d 205, 218 (6th Cir. 1999). Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail. Id. at 170." Johnson v. Ganim, 342 F.3d 105, 117 (2nd Cir. 2003).

*See also* Weyant v. Okst, 101 F.3d 845, 858 (2nd Cir. 1996); Dobosz v. Walsh, 892 F.2d 1135, 1140 (2nd Cir. 1989) ("[Plaintiff's] allegations that [Defendants] retaliated against him for the exercise of First Amendment rights raise questions of motivation that make summary judgment based on qualified immunity wholly inappropriate.").[8]

The Court should therefore deny Defendants' motion for qualified immunity.

---

[8] It is important to highlight that Defendants' motion for qualified immunity is based solely on their version of the facts which ignores the allegations plead in the First Amended Complaint. Of course, the Court cannot credit Defendants' version of the facts, or their incomplete recitation of the allegations in the pleading. When the allegations in total are taken into consideration, qualified immunity is simply not an available defense in this case. Id.

## <u>CONCLUSION</u>

For the reasons set forth *supra*, Defendants' motion to dismiss the First Amended

Complaint should be denied in all respects.

Dated: White Plains, New York
       May 8, 2008

> LOVETT & GOULD LLP
> By: _____
> Kim Berg (KB 1425)
> Attorneys for Plaintiff
> 222 Bloomingdale Road
> White Plains, New York 10605
> Telephone: 914-428-8401
> Facsimile:  914-428-8916